**McDONNELL AIRCRAFT CORPORATION, a Corporation (Third Party Plaintiff), Appellant,**

v.

**HARTMAN–HANKS–WALSH PAINTING COMPANY, a Corporation (Third Party Defendant), Respondent.**

No. 45964.

Supreme Court of Missouri,

Division No. 1.

April 13, 1959.

Motion for Rehearing or to Transfer to Court en Banc Denied May 11, 1959.

Doris J. Banta, St. Louis, Carter, Bull & Baer, St. Louis, of counsel, for appellant.

George E. Heneghan and Heneghan, Roberts & Cole, St. Louis, for respondent.

HYDE, Presiding Judge.

This suit was begun by Arthur G. Arbuckle, a minor, by next friend, against McDonnell Aircraft Corporation and its Superintendent, hereinafter referred to as McDonnell, for damages for personal injuries. It resulted in a judgment against' McDonnell which was settled for $32,100. McDonnell seeks to recover this amount, with interest and costs, from Arbuckle's employer Hartman-Hanks-Walsh Painting Company, hereinafter called Hartman, on a third party petition. The issues between Arbuckle and McDonnell were severed and tried separately with the result above stated. Thereafter, the Court sustained a motion to dismiss Count II of McDonnell's second amended third party petition (Count I was then dismissed without prejudice by McDonnell) and McDonnell has appealed from this judgment of dismissal.

When Arbuckle was injured, his employer Hartman was painting McDonnell's plant under a contract with McDonnell. Arbuckle received workmen's compensation from Hartman and sued McDonnell for his injuries (caused by contact with an exposed electric wire) as he had a right to do. General Box Co. v. Missouri Utilities Co., 331 Mo. 845, 55 S.W.2d 442, 446; Anzer v. Humes-Deal Co., 332 Mo. 432, 58 S.W.2d 962, 964; Bunner v. Patti, 343 Mo. 274, 121 S.W.2d 153. The issues on the merits are whether Count II of McDonnell's second amended third party petition states a claim for indemnity; and if so, whether Sections 287.120 and 287.150 (statutory references are to RSMo and V.A.M.S.) of our Workmen's Compensation Act prevent its recovery on such claim. However, Hartman contends the dismissal of Count II of McDonnell's first

amended third party petition was a dismissal with prejudice under Section 510.-150, and McDonnell did not appeal therefrom, so that matter is res judicata and cannot be considered on this appeal.

McDonnell's first amended third party petition in two counts was properly filed in 1952. Hartman's motion to dismiss was sustained as to Court II thereof on August 26, 1952, but the motion to dismiss Count I was taken under submission. The issues between Arbuckle and McDonnell were then tried but no disposition was made of the motion as to Count I. McDonnell's second amended third party petition was filed in 1954 (after Arbuckle had obtained judgment against it) and motions to dismiss both counts thereof were thereafter filed. On October 13, 1956, the motion to dismiss Count I was overruled and the motion to dismiss Count II was sustained. Thereafter a timely motion for new trial was filed by McDonnell and, when it was overruled, Count I was dismissed without prejudice and a timely notice of appeal filed. Hartman says: "If dismissal of first amended third party petition had not become a final judgment when dismissed, it certainly became a final judgment when appellant dismissed Count I and appellant's motion for a new trial did not preserve any claim of error as to the dismissal of Count II of that petition and when notice of appeal was filed, did not include any attempt to appeal from the final judgment arising from dismissal of Count II of first amended petition." However, there was no final appealable judgment until all of the issues were disposed of; and Count I remained undisposed of until McDonnell dismissed it. Sec. 511.020; Sec. 512.020; Weir v. Brune, Mo.Sup., 256 S.W.2d 810; White v. Sievers, 359 Mo. 145, 221 S.W.2d 118; Magee v. Mercantile Commerce Bank & Trust Co., 339 Mo. 559, 98 S.W.2d 614 and cases cited. Therefore, the 1952 order sustaining the motion to dismiss Count II of the first amended third party petition was only an interlocutory order (see Barlow v. Scott, Mo.Sup., 85 S.W.2d 504, 519)

and there was no final appealable judgment until 1956 when both Counts were disposed of by McDonnell's dismissal of Count I after the Court had dismissed Count II. McDonnell had been permitted to file its second amended third party petition in the meantime; and it was that petition upon which final judgment was rendered. Of course, no motion for new trial is necessary to preserve for review the sufficiency of a petition. Rule 3.23, 42 V.A.M.S.; see also Gerber v. Schutte Investment Co., 354 Mo. 1246, 194 S.W.2d 25; Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 1167, 200 S.W.2d 55, 63. We, therefore, hold that the sufficiency to state a claim, of Count II of McDonnell's second amended third party petition, is properly before us for review.

Count II of McDonnell's second amended third party petition stated that Arbuckle sued and had judgment against it for his injuries and that it had settled the judgment for $32,100 and costs. It further stated that Hartman entered into a written contract with it in 1951 "to perform and furnish all the necessary labor and equipment, including supervision, required to paint the structural steel roof supports, heating conduits, pipes, upper walls and ceilings of McDonnell's factory buildings" (copies of letter and order making up the contract were attached and incorporated by reference); that both parties "entered into such painting contract cognizant of such hazards and of the exposure and possible danger of contact with highpowered electric lines necessary to the operation of overhead cranes and the manufacturing operations in McDonnell's said plant" ; that agents of both parties "did undertake a tour of the McDonnell plant and did identify and locate the existence of all such hazards and dangers to the individual painters and particularly as to the existence and location of exposed 440 volt electric crane conduits located amongst the steel girders upon which such painting work was to be performed" ; that Hartman "did agree to take all steps necessary for the full in-

struction of its employees as to the existence and location of such hazards, including the aforesaid exposed electric crane conduits, and to take and perform all necessary instructions and precautions for their safety and protection, including an obligation on the part of Hartman to personally instruct each of said painting employees as to the location and existence of such hazards as a prerequisite of their being allowed to begin such painting work in any part of McDonnell's premises"; that Hartman "did fail and omit entirely to instruct said Arbuckle or caution him in any respect regarding the existence and location of hazards in the McDonnell plant, and particularly did fail to instruct and safeguard said Arbuckle concerning the existence and location of exposed 440 volt electric crane conduits, but, on the contrary, the said Hartman did assign said Arbuckle to work as a painter under the supervision of one of its painting foremen and did permit him to undertake the performance of such painting work at the plant in the steel girders near the roof of McDonnell's premises in close proximity to the location of one of the exposed 440 volt overhead crane conduits"; and that "Arbuckle did not know of the presence or danger from such electric conduit, and shortly after undertaking the performance of his work as a painter, he inadvertently came in contact with such electric conduit and was caused to be burned and was caused to fall twenty feet to the floor below."

It is McDonnell's contention that it has a valid claim for indemnity against Hartman and that Sections 287.120 and 287.150 of our Workmen's Compensation Act do not prevent it from recovery on such claim, as contended by Hartman. McDonnell says it has a valid claim for indemnity, both because it arises from common law liability for a tort, as to which Hartman was the one really guilty of fault, while it, without guilty responsibility, has become legally liable to the injured party and has discharged the liability; and because there is an implied promise to indemnify, which

arises out of contract and obligations expressly assumed thereunder by Hartman, namely, an implied contract arising from a state of facts which makes it the equitable duty of Hartman to bear the obligation which has been cast on McDonnell. Citing Barb v. Farmers Insurance Exchange, Mo. Sup., 281 S.W.2d 297; Hunter v. De Luxe Drive-In Theaters, Mo.App., 257 S.W.2d 255; Busch & Latta Paint Co. v. Woermann Const. Co., 310 Mo. 419, 276 S.W. 614; City of Springfield v. Clement, 205 Mo.App. 114, 225 S.W. 120; Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133; American President Lines, Ltd. v. Marine Terminals Corp., 9 Cir., 234 F.2d 753, certiorari denied 352 U.S. 926, 77 S.Ct. 222, 1 L.Ed.2d 161; American District Telegraph Co. v. Kittleson, 8 Cir., 179 F.2d 946; Westchester Lighting Co. v. Westchester County Small Estates Corp., 278 N.Y. 175, 15 N.E.2d 567; Lunderberg v. Bierman, 241 Minn. 349, 63 N.W.2d 355, 43 A.L.R.2d 865; and other Federal and New York cases. In the City of Springfield case, the City had been held liable for personal injuries, sustained by a woman who fell on a sidewalk, for negligence in permitting the sidewalk to become and remain in a dangerous condition because of accumulation of ice thereon. The Court upheld the right of the City to recover on an action of indemnity against the property owner who negligently caused the condition by permitting downspouts carrying water from the roof of his building to become leaky so that water was precipitated on the sidewalk and froze in ridges. The Court said (225 S.W. loc. cit. 122) that the injured woman had a cause of action against the owner; that his negligence "was the active and primary cause" of her injury; and that "while the city was liable for negligently permitting the sidewalk in question to become and remain in a dangerous condition, its negligence was constructive and secondary only." In the Busch & Latta case, we approved what was said in the City of Springfield case as to the right of indemnity, and said (276 S.W.

loc. cit. 619): "The limit of the rule may thus be stated: The right to indemnity in such cases is confined to cases where the parties are not in pari delicto. In all cases where one party creates the condition which causes the injury, and the other does not join therein, but is exposed to liability, and suffers damages on account of it, the rule that one of two joint tort-feasors cannot maintain an action against the other for indemnity does not apply." In that case, the defendant in the indemnity suit had constructed a scaffold for Busch & Latta, which collapsed and injured two of its employees for whose injuries it paid damages. We held that the parties were not in pari delicto (Busch & Latta's negligence was failure to inspect); that defendant's negligence was in manufacturing and furnishing for a specific purpose a structure which was unfit; and that defendant "was primarily liable for injuries caused by the defects in the scaffold." In the Barb case there was a landlord and tenant relation and the tenant created the dangerous condition which violated the terms of the lease. We cited and quoted (281 S.W.2d loc. cit. 304) Sec. 95 A.L.I. Restatement of Restitution, concerning primary liability for creating a dangerous condition; see also Section 96 Restatement of Restitution. In the Hunter case, damage was done by independent contractors for which a default judgment was obtained against their employer. Recovery on a claim of indemnity was allowed because the court found (257 S.W.2d loc. cit. 260) "the employer was not liable in any degree for the negligence of its independent contractor."

The situation in this case is different from that presented in any of the previous Missouri cases. "It is difficult to state any general rule or principle as to when indemnity will be allowed and when it will not." (Prosser on Torts, 2d Ed., 251, Sec. 46.) Indemnity is generally allowed "in favor of one who is held responsible solely by imputation of law because of his relation to the actual wrongdoer, as where an employer is vicariously liable for the tort of a servant;" or "in favor of one who was under only a secondary duty where another was primarily responsible, as where a municipal corporation, held liable for failure to keep its streets in safe condition, seeks recovery from the person who created the condition." (Prosser, 250, Sec. 46.) However, as between joint tort-feasors in pari delicto contribution rather than indemnity is the right available. Nevertheless, indemnity is allowed in some circumstances between joint tort-feasors not considered in pari delicto because of different theories of various courts. The New York cases apply a test of passive and active negligence, allowing a tort-feasor who is considered only passively negligent to recover indemnity from one who is considered actively negligent. Indemnity Between Tort-Feasors, Meriam and Thornton, 25 N.Y.U. Law Review 845; Indemnity Between Negligent Tort Feasors: A Proposed Rationale, Davis, 37 Iowa Law Review 517, 539; Indemnity Among Tort-feasors in New York, Keeler, 39 Cornell Law Quarterly 484, 499. Texas courts have applied a test of breach of duty owed by one tort-feasor to the other, allowing the one who breached no duty to the other to recover indemnity from the other, who has breached a duty owed to him, although both have breached a duty to an injured third person. Contribution and Indemnity Among Tort Feasors, Hodges, 26 Texas Law Review 150, 162; see also Davis article, supra, 37 Iowa Law Review 517, 545. Judge Learned Hand, in Slattery v. Marra Bros., 2 Cir., 186 F.2d 134, described indemnity as being based on "a great difference" in the gravity of the fault of two tort-feasors. All of these tests seem to be attempts to apply equitable principles and none of them satisfactorily explains all cases.

The American Law Institute Restatement of Restitution places indemnity on a principle similar to a quasi-contractual basis and we have decided to follow the rule it states. On page 328, it is said: "By a breach of duty to another, a person may

cause the other to be liable in tort to a third person, as where a servant is negligent, causing both himself and his master to be liable. In such case if the other pays the damages thereby relieving the tortfeasor from liability, there is a right to restitution." Sec. 76 states: "A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct." (See Illustration 4, page 334.) More nearly applicable to the situation here is the following part of Sec. 95: "Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels* * * * which, as between the two, it was the other's duty to make safe, he is entitled to restitution." In Comment (a), it is stated: "The rule is also applicable to situations in which a person has a nondelegable duty with respect to the condition of his premises but has entrusted the performance of this duty to a third person, either a servant or an independent contractor." See also Sec. 96, Restitution, especially Illustration 1.

 McDonnell did have a nondelegable duty to Hartman's employee, Arbuckle, with respect to the condition of its premises where he was to work and certainly to warn him of any condition there, unknown to him, that was not safe or could not be made safe. ("The servant working on his master's premises is a business visitor and entitled to the protection of one," Prosser, 374–376; and this obligation extends to the servants of an independent contractor working on the premises, Prosser, 374, note 6.) However, McDonnell's pleadings state that Hartman knew of the dangerous electric lines required for the operation of the cranes; that its agents were shown the location of the exposed lines; that Hartman agreed to warn and instruct each of its painters as to the existence and location of these lines operating the cranes before allowing them to begin painting work on McDonnell's premises and take all necessary precautions for their safety; and that Hartman sent Arbuckle to paint near one of the exposed crane conduits without any warning or instruction as to its existence, location or danger. We think these allegations show a situation that comes within the rule of Sec. 95, Restitution, not only showing that McDonnell had entrusted to Hartman the performance of its nondelegable duty to protect Hartman's employees from the exposed crane conduits but also that Hartman had agreed to assume and perform this duty and negligently failed to do so. We, therefore, hold that McDonnell's allegations show that, as between the two, it was Hartman's duty to protect Arbuckle from this danger and that Count II of McDonnell's third party petition sufficiently states a claim for indemnity.

The final question is an even more difficult one and there is a conflict of authority on it, which however is to some extent due to different wording and construction of workmen's compensation statutes in the various states. For discussion of the cases see Contribution and Indemnity: The Effect of Workmen's Compensation Acts, 42 Va.Law Review 959. In Larson's Workmen's Compensation Law, Sec. 76.10, it is said: "Perhaps the most evenly-balanced controversy in all of compensation law is the question whether a third party in an action by the employee can get contribution or indemnity from the employer, when the employer's negligence has caused or contributed to the injury." See also Larson, Secs. 76.51, 76.52. If indemnity is allowed, the employer (Hartman) would be required to pay the same amount (Arbuckle's judgment for personal injuries) that it would have been required to pay if there was no workmen's compensation act and Arbuckle had sued Hartman directly. (The difference is that it would pay this to McDonnell instead of to Arbuckle.) However, if indemnity is not allowed, McDon-

nell, receiving no benefits from the compensation act, would be forced to pay all of the damages when normally it would have paid none at all, if entitled to indemnity. Thus McDonnell's liability for the whole amount would be due solely to the chance that the other party happened to be under the compensation act. Furthermore, McDonnell, a stranger to the act, would be required to subsidize Hartman's compensation liability because Arbuckle would be required to pay Hartman, out of his recovery from McDonnell, the full amount Hartman had paid him for workmen's compensation. See Giambelluca v. Missouri Pacific R. Co., Mo.Sup., 320 S.W.2d 457, and cases cited; State ex rel. and to use of Missouri Pacific R. Co. v. Haid, 332 Mo. 616, 59 S.W.2d 690; Superior Minerals Co. v. Missouri Pacific R. Co., 227 Mo.App. 1044, 45 S.W.2d 912.

Hartman relies on Sec. 287.120, subd. 1, which is as follows: "If both employer and employee have elected to accept the provisions of this chapter, the employer shall be liable irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of or in the course of his employment, and shall be released from all other liability therefor whatsoever, whether to the employee or any other person." Hartman also says that allowing recovery of indemnity against it would nullify Sec. 287.150 providing that the employer shall be subrogated to the right of the employee, against third persons liable for his injuries, to recover the full amount the employee would have been entitled to recover, paying to the employee any recovery in excess of the compensation paid him. The U. S. Supreme Court has recently construed similar provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., in Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 234, 100 L.Ed. 133. The court held that shipowner could recover indemnity from the Stevedoring Company for damages the shipowner had to pay to an employee of the Stevedoring Company, who was injured because the Stevedoring Company improperly loaded the ship so that a heavy roll of pulp broke loose and fell on him in unloading. The court said: "The obvious purpose of this provision is to make the statutory liability of an employer to contribute to its employee's compensation the exclusive liability of such employer to its employee, or to anyone claiming under or through such employee, on account of his injury or death arising out of that employment. In return, the employee, and those claiming under or through him, are given a substantial quid pro quo in the form of an assured compensation, regardless of fault, as a substitute for their excluded claims. On the other hand, the Act prescribes no quid pro quo for a shipowner that is compelled to pay a judgment obtained against it for the full amount of a longshoreman's damages. * * * The shipowner's action here is not founded upon a tort or upon any duty which the stevedoring contractor owes to its employee. The third-party complaint is grounded upon the contractor's breach of its purely consensual obligation owing to the shipowner to stow the cargo in a reasonably safe manner. Accordingly, the shipowner's action for indemnity on that basis is not barred by the Compensation Act." This case has been followed in Weyerhaeuser Steamship Co. v. Nacirema Operating Co., Inc., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491; see also San Francisco Unified School District v. California Building Maintenance Co., Cal.App., 328 P.2d 785.

 The same result was reached under the New York compensation act (containing substantially the same provision as Sec. 287.120) in the leading New York case of Westchester Lighting Co. v. Westchester County Small Estates Corp., 15 N.E.2d 567, 569. The court pointed out that plaintiff seeking indemnity did

not sue for damages "on account of" the death of the employee therein. See also American District Telegraph Co. v. Kittleson, 8 Cir., 179 F.2d 946; 38 Minnesota Law Review 880. We think the language of Sec. 287.120(1), "shall be released from all other liability *therefor* whatsoever," means all other liability "for personal injury or death of the employee"; and does not mean liability for breach of an independent duty or obligation owed to a third party by an employer whose liability for injury to his employee is under the compensation act. It seems unlikely that workmen's compensation acts were intended to affect the rights of third parties outside of the employer-employee relationship. For strong arguments for the contrary view see dissenting opinions in the Westchester case, 15 N.E.2d loc. cit. 569, and in the Ryan case, 76 S.Ct. loc. cit. 238; see also Hunsucker v. High Point Bending & Chair Co., 237 N.C. 559, 75 S.E.2d 768. Since such third parties receive no benefit from the compensation act (as does an employer), therefore in the absence of an express provision in the Act, it does not seem proper to hold that, by implication, the Act has taken from them rights which they had before. There does not seem to be any contention that the compensation act would prevent the enforcement of an express contract of indemnity; and in the situation alleged in this case, of an express agreement by Hartman to perform the duty of McDonnell to warn and protect Hartman's employees, we think it reasonable to rule that the Act does not prevent holding Hartman liable to indemnify McDonnell for loss caused McDonnell by the breach of its duty to McDonnell, which arose by reason of Hartman's express agreement to assume and perform it. Such a ruling does not hold the employer liable for the personal injury or death of his employee but instead holds him liable for the breach of an independent duty to a third party which he expressly agreed to perform. We, therefore, hold Hartman would be liable to indemnify McDonnell

for its loss if the allegations of Count II of McDonnell's third party petition are proved to be true.

The judgment is reversed and the cause remanded.

All concur.