Marina C. COELLO, et al., Plaintiffs,

v.

TUG MANUFACTURING CORPORATION and Quadrastat Controls Corporation, Defendants.

TUG MANUFACTURING CORPORATION, Third–Party Plaintiff,

v.

RELIANCE EQUIPMENT, INC. and Ford Motor Company, Third–Party Defendants.

No. 89–0371–CV–W–9.

United States District Court, W.D. Missouri, W.D.

Jan. 31, 1991.

Gary C. Robb, Robb & Robb, Kansas City, Mo., for plaintiffs.

James E. Cooling, Paul V. Herbers, Cooling & Herbers, P.C., Kansas City, Mo., for Tug Mfg. Corp.

Michael E. McCausland, Kansas City, Mo., for Quadrastat Controls Corp.

James C. Morrow, Gordon N. Myerson, P.C., Kansas City, Mo., for Reliance Equipment Inc.

W. Russell Welsh, Douglas S. Laird, Polsinelli, White, Vardeman & Shalton, Kansas City, Mo., for Ford Motor Co.

ORDER DENYING MOTION TO DISMISS AND DENYING IN PART AND GRANTING IN PART MOTION FOR SUMMARY JUDGMENT OF THIRD–PARTY DEFENDANT FORD MOTOR COMPANY AGAINST DEFENDANT AND THIRD–PARTY PLAINTIFF TUG MANUFACTURING COMPANY

BARTLETT, District Judge.

### Background

Hersan Coello died as a result of on-the-job injuries he received at the Ford Claycomo Assembly Plant while operating an industrial tow tractor manufactured by Tug Manufacturing Corporation (Tug). It is undisputed that Coello was an employee of Ford Motor Company (Ford) and that he was injured on the job, that Ford submitted to the jurisdiction of the workers' compensation system and that workers' compensation benefits have been paid to his surviving spouse and children. Appendix to Ford's Motion for Summary Judgment, Exhibits A, B, C and D; Tug's Suggestions in Opposition to Ford's Motion for Summary Judgment at 2.

On April 20, 1989, Coello's spouse, Marina Coello, filed an action on behalf of herself and her three minor children against Tug and Quadrastat Controls Corporation (Quadrastat). Plaintiffs allege that Tug manufactured the industrial tow tractor involved in the accident and that Quadrastat manufactured the gearshift selector unit contained in the same tow. Plaintiffs allege, *inter alia,* that the tow tractor is defective because it unexpectedly shifted into reverse, striking plaintiff's decedent.

Tug and Quadrastat subsequently filed Cross–Claims against each other.

On May 26, 1989, Tug filed a Third–Party Complaint against Ford and Reliance Equipment, Inc. (Reliance). Tug alleges that Reliance is subject to indemnification and/or contribution because of its maintenance work on the tow tractor. Third Party Complaint at 9. In regard to Ford, Tug alleges:

10. If defendant Tug is held liable to plaintiffs, as a result of the alleged defective or dangerous condition of the subject tow tractor, and if such alleged defective or dangerous condition concerns the engine or transmission thereof, then Tug is entitled to implied contractual indemnity and/or contribution or indemnity from third-party defendant Ford, as Ford supplied and sold the engine and transmission components to Tug, and these type components were made available to other members of the general public in the stream of commerce, and Ford was responsible for the design, manufacture, and condition of the engine and transmission components of the tractor at the time they were incorporated in the manufacture of the entire tow tractor assembly by Tug in 1977.

11. If defendant Tug is held liable to plaintiffs on a theory of failure to warn of any alleged defective or dangerous condition, and such failure to warn relates to the engine or transmission components of the tow tractor, then Tug is entitled to implied contractual indemnity and contribution or indemnity from Ford for the reasons set forth in the preceding paragraph.

12. Third-party plaintiff Tug's allegations against Ford are made in Ford's capacity as manufacturer of component parts of the subject tow tractor, and not in its capacity as employer of deceased Hersan Coello, or in any other capacity.

On October 6, 1989, Ford filed a Motion for Summary Judgment against Tug asserting that the Missouri Workers' Compensation Statute provides the exclusive remedy against Ford.

Every employer subject to the provisions of this [workers' compensation] chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of his employment, and shall be released from all other liability therefor whatsoever, whether to the employee or any other person.

Mo.Rev.Stat. § 287.120.1.

Ford argues that because it is subject to the provisions of workers' compensation, it is statutorily immunized for any additional liability to Tug. Accordingly, Ford seeks summary judgment to dismiss it totally from this lawsuit.

On November 3, 1989, Tug opposed Ford's Motion for Summary Judgment and also moved for leave to file its Amended Third–Party Complaint. In its November 3, 1989, opposition, Tug "addresses the substance of Ford's motion with relation to both the original Third–Party Complaint and the additional allegations made in the Amended Third–Party Complaint." Tug asserts that:

The issue to be decided is whether Ford can escape liability to Tug for implied contractual indemnity, contribution or non-contractual indemnity, by virtue of the fortuitous fact that the injured party happens to be the employee of Ford, when Ford:

1) is a manufacturer of component parts alleged to be defective in plaintiffs' petition;

2) is a designer of the product manufactured by Tug; and

3) intentionally removed a safety device that was in the product at the time Ford purchased it from Tug.

Ford did not file a reply to Tug's opposition.

On November 29, 1989, Tug submitted deposition testimony in opposition to Ford's Motion for Summary Judgment and in Support of Request for Leave to Amend. The deposition excerpts support Tug's position that Ford was involved in the original design and development of the MD–30 tow tractor. Also, the deposition excerpts support Tug's position that some representative of Ford removed the Rider safety seat from the subject tractor.

Also, on November 29, 1989, Tug's Amended Third–Party Complaint was filed in which it makes these additional allegations against Ford.

11. Tug additionally alleges that Ford actively and substantially participated in the design and testing of the model tow tractor alleged to have been involved in the incident mentioned in plaintiff's Complaint, in that the tow tractor was built to Ford's express specifications, including, but not limited to, the design of the transmission, the inclusion of the Quadrastat components and other safety-related devices and operational controls. Tug further alleges that Ford's input into the specifications and design modifications of the subject tow tractor was so intrusive, specialized and specific that Ford had an independent duty of due care to Tug in the design and specification of component parts.

.        .        .        .        .

13. Tug additionally alleges that, at the time of the sale of the subject tow tractor to Ford, the tow tractor contained and was equipped with a 'Rider' safety seat system, which was designed to shut-off the engine upon its operator leaving the Rider safe seat when the gearshift is not in park gear. Tug alleges that Ford, through its agents, representatives and employees, intentionally removed the Rider safe seat system from the tow tractor.

14. Because of the intentional actions of Ford, the incident involving plaintiffs' decedent was not an 'accident' under the Missouri Workers' Compensation Act, and Ford is liable for contribution to Tug for any judgment plaintiffs may gain in this case.

### Standard for Summary Judgment

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, deposi-

tions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the Court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Inland Oil and Transport Co. v. United States,* 600 F.2d 725, 727–28 (8th Cir.), *cert. denied,* 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning,* 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter,* 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). *See also City of Mt. Pleasant v. Associated Electric Cooperative, Inc.,* 838 F.2d 268, 273 (8th Cir.1988). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 106 S.Ct. at 2553.

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the *absence* of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." *Id.,* 106 S.Ct. at 2511. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted).

The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. *Id.* Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.,* 106 S.Ct. at 2512.

### Tug May Bring a Claim for Indemnity Against Ford

A federal court exercising diversity jurisdiction must apply the substantive law of the forum in which it sits. *Wolgin v. Simon,* 722 F.2d 389, 391 (8th Cir.1983).

■ According to Missouri law, an action by a third party for indemnity against an employer is not barred by Mo.Rev.Stat. § 287.120.1 when the employer breaches an independent duty or obligation to the third party.

■ In *McDonnell Aircraft Corporation v. Hartman–Hanks–Walsh Painting*

Co., 323 S.W.2d 788, 796 (Mo.1959), the Missouri Supreme Court interpreted the language in Mo.Rev.Stat. § 287.120.1 that an employer "shall be released from all other liability therefor whatsoever" to mean "all other liability 'for personal injuries or death of the employee;' and *does not mean liability for breach of an independent duty or obligation owed to a third party* by an employer whose liability for injury to his employee is under the Compensation Act." (Emphasis added.) The court reasoned:

> It seems unlikely that workmen's compensation acts were intended to affect the rights of third parties outside of the employer-employee relationship.... Since such third parties receive no benefit from the compensation act (as does an employer), therefore in the absence of an express provision in the Act, it does not seem proper to hold that, by implication, the Act has taken from them rights which they had before.

*Id.*

Ford argues that an employer does not owe an independent duty to a third party under *McDonnell Aircraft* unless an express indemnity agreement exists. The independent duty in *McDonnell Aircraft* did not arise from an express promise to indemnify; it arose from a written contract in which the employer expressly agreed to assume and perform a third-party's duty to warn the employer's employees. *Parks v. Union Carbide Corp.*, 602 S.W.2d 188 (Mo. 1980) (en banc), relied on by Ford, determined whether the language in a written agreement between an employer and a third party established an independent duty as defined in *McDonnell Aircraft*. The court did require that a written agreement contain "clear and unequivocal" terms of a promise to indemnify.

In determining whether written agreements establish an independent duty, lower Missouri courts likewise have required an express intent to indemnify. *See Missouri Pacific Railroad Company v. General Mills, Inc.*, 743 S.W.2d 433 (Mo. App.1987); *Bonenberger v. Associated Dry Goods Co.*, 738 S.W.2d 598 (Mo.App.1987);

*Martin v. Fulton Iron Works Co.*, 640 S.W.2d 491 (Mo.App.1982). In *Linsin v. Citizens Electric Co.*, 622 S.W.2d 277, 281 (Mo.App.1981), the court relied on the requirement of *Parks* that contractual language must contain a clear and unequivocal "intention to indemnify liabilities due to indemnitee's own negligence" in dismissing a claim for indemnification based on both a contractual and non-contractual relationship between an employer and a third party.

Tug does not claim that a written contract exists to govern its claim for indemnity from Ford. The cases relied on by Ford do not establish that a written contract containing an express promise to indemnify must exist before a claim for indemnification can be brought against an employer under the independent duty exception to § 287.120.1.

Although the specific independent duty in *McDonnell Aircraft* was set forth in a written contract, the language used by the court is not so limited. (The release from liability provided in § 287.120.1 "does not mean liability for breach of an independent duty or obligation owed to a third party by an employer whose liability for injury to his employee is under the Compensation Act.") The court's reasoning supports the unrestricted language used. "Since such third parties receive no benefit from the Compensation Act ... it does not seem proper to hold that, by implication, the Act has taken from them rights which they had before." In requiring a written contract to contain an express promise to indemnify in order to come within the independent duty exception of *McDonnell Aircraft*, the court in *Parks* specifically noted that "[t]his appeal presents a question of contractual, as opposed to non-contractual, indemnity." 602 S.W.2d at 188. Under Missouri law, an employer may owe an independent duty to a third party in the absence of a written indemnity agreement.

Here, Tug asserts that there are two independent duties owed by Ford to Tug because 1) Ford was a seller of component parts incorporated into the tow tractor;

and 2) Ford designed and specified many of the features of the tow tractor.

Missouri courts have not directly addressed whether either of these independent duties would create an exception to the exclusive remedy provision of the Missouri Workers' Compensation Act. In a diversity case,

> [w]here direct expression by an authorized state tribunal is lacking, it is the duty of the federal court, in dealing with matters of either common law or statute, to have regard for any persuasive data that is available, such as compelling inferences or logical implications from other related adjudications and considered pronouncements. The responsibility of the federal courts, in matters of local law, is not to formulate the legal mind of the state, but merely to ascertain and apply it.

*Yoder v. Nu–Enamel Corporation,* 117 F.2d 488, 489 (8th Cir.1941); cited with approval in *Countryside Casualty Co. v. Orr,* 523 F.2d 870, 874, n. 6 (8th Cir.1975).

### 1. Ford's Duty As a Seller of Component Parts

Plaintiffs' Complaint involves allegations of strict liability and failure to warn against defendants Tug and Quadrastat. Tug's Amended Third–Party Complaint alleges that Ford was an "upstream" seller of component parts (engine and transmission) incorporated in the tow tractor manufactured and sold by Tug.[1]

In *Welkener v. Kirkwood Drugstore Co.,* 734 S.W.2d 233, 243 (Mo.App.1987), the Missouri Court of Appeals stated that "[u]nder the philosophy of the Missouri decisions, ... the doctrines of indemnity and contribution are applicable in strict products liability cases." "[L]iability is imposed on all those in the chain of placing a defective product in the stream of commerce, and the product need not be actually sold if it has been injected in the stream of commerce by other means." *Commercial Distribution Center, Inc. v. St. Regis Paper Company,* 689 S.W.2d 664, 670 (Mo. App.1985), citing *Gunderson v. Sani–Kem Corp.,* 674 S.W.2d 665, 668 (Mo.App.1984).

Ford's duty to supply defect-free component parts to Tug represents a duty independent of any duty of Ford to its employee, Hersan Coello. Therefore, based on the reasoning of the Missouri Supreme Court in *McDonnell Aircraft Corporation,* I conclude that Missouri courts would find that this independent duty creates an exception to the exclusive remedy provision of the Missouri Workers' Compensation Act.[2]

### 2. Ford's Duty As a Designer of a Product it Purchased

Tug's Amended Third–Party Complaint also alleges that Ford designed and specified many of the features of the tow tractor. On November 29, 1989, Tug submitted deposition testimony to support this allegation. Tug alleges that Ford's participation in the design of the tow tractor "was so intrusive, specialized and specific that Ford had an independent duty of due care running from Ford to Tug in the design and specification of component parts."

Missouri recognizes defective design as a basis for strict liability in tort. *Blevins v. Cushman Motors,* 551 S.W.2d 602, 606–07 (Mo.1977) (en banc); *Richardson v. Holland,* 741 S.W.2d 751, 753 (Mo. App.1987).

No Missouri decision has been found concluding that designer liability gives rise to an independent duty constituting an exception to the exclusive remedy provision of the Missouri Workers' Com-

---

1. Neither Ford nor Tug refers to any facts outside the Third–Party Complaint on this issue. Therefore, this point will be addressed as a Motion to Dismiss. Accordingly, the factual allegations in the Third–Party Complaint on this issue will be assumed to be true for the purpose of ruling this motion.

2. Ford submits an affidavit that Ford did not have any contract with Tug providing for indemnification. Because Tug's theory is based on noncontractual indemnity, the absence of a contract of indemnity is not controlling. For the same reason, this affidavit does not alter the conclusion that this part of Ford's motion should be ruled as a Motion to Dismiss rather than a Motion for Summary Judgment.

pensation Act. However, based on the reasoning of the Missouri Supreme Court in *McDonnell Aircraft Corporation*, I conclude that Missouri courts would find that if Ford participated in the design of the tow tractor in an "intrusive, specialized and specific" way, an independent duty of due care would be created that would constitute an exception to the exclusive remedy provision of the Missouri Workers' Compensation Act. *See Weggen v. Elwell–Parker Electric Co.*, 510 F.Supp. 252, 254 (S.D. Iowa 1981), where the court recognized that designer liability can give rise to such an independent duty:

> The court believes that a purchaser's input into the specifications and design modifications may be so intrusive, specialized and specific that it gives rise to an independent duty requiring the purchaser to use due care in the design and specification of component parts.

*Tug May Bring a Claim for Contribution Against Ford Based on Allegations That Ford Intentionally Removed a Safety Device From the Tow Tractor*

■ Unlike indemnity, claims for contribution are based on joint liability among alleged tortfeasors. Under Missouri law, the employer's immunity under Mo.Rev. Stat. § 287.120.1 ordinarily shields the employer from any liability for contribution. *State ex rel. Maryland Heights Concrete Contractors, Inc. v. Ferriss*, 588 S.W.2d 489 (Mo.1979) (en banc). *See also Redford v. R.A.F. Corporation*, 615 F.Supp. 547 (W.D.Mo.1985). "In the absence of *actionable* negligence toward the plaintiff, an alleged tortfeasor is not liable to other defendants for contribution.... Unless the plaintiff has (or had) a cause of action against the person from whom contribution is sought, that person is not liable for contribution to other defendants." *Sweet v. Herman Bros., Inc.*, 688 S.W.2d 31, 32–33 (Mo.App.1985). If the Coello plaintiffs do not have a cause of action against Ford due to the exclusive remedy provision of Mo. Rev.Stat. § 287.120.1, Ford cannot be liable to Tug for contribution.

Tug alleges there are two reasons why plaintiffs may have a direct action against Ford despite the exclusivity provision of the Workers' Compensation Act: 1) Ford intentionally removed a safety device from the tow tractor; and 2) Ford acted in a "dual capacity" with regard to the manufacture of the tow tractor.

Tug alleges that "Ford ... intentionally removed the Rider safe seat system from the tow tractor.... Because of the intentional actions of Ford, the incident involving plaintiffs' decedent was not an 'accident' under the Missouri Workers' Compensation Act, and Ford is liable for contribution to Tug for any judgment plaintiffs may gain in this case." Tug's Amended Third–Party Complaint at 13–14. Tug has submitted the deposition testimony of John Barclay supporting this allegation.

■ An employee may bring a cause of action against his employer for a "non-accidental" injury despite the exclusivity provision of Mo.Rev.Stat. § 287.120.1. *Speck v. Union Electric Company*, 741 S.W.2d 280 (Mo.App.1987). Under Missouri law, the intent requirement for a "non-accidental" injury is met if an employer acts with "substantial certainty" that employee injury will result. "We believe that when an employer acts intentionally and is substantially certain that injury to an employee will result, the employer has a specific purpose to inflict injury." *Id.* at 283.

Missouri has not directly addressed whether an injury allegedly resulting from the deliberate removal of a safety device constitutes a "non-accidental injury" outside the exclusivity provision of the Workers' Compensation Act but the issue has been considered by other state courts. The West Virginia Supreme Court held that when an employer intentionally removes a safety device, an employee may sue his employer and a defendant may bring an action for contribution against the employer. *Sydenstricker v. Unipunch Products, Inc.*, 169 W.Va. 440, 288 S.E.2d 511 (1982). An Ohio appellate court held that a complaint by an employee alleging intentional removal of safety devices by his employer was not barred by the exclusivity provision of the Workers' Compensation Act. *Stoc-*

*kum v. Rumpke Container Service, Inc.,* 21 Ohio App.3d 236, 486 N.E.2d 1283 (1985). In *Bradshaw v. Anco Insulation, Inc.,* 450 So.2d 733 (La.App.1984), the court held that an employee's allegation that his employer intentionally installed a safety bar improperly, knowing that consequences were substantially certain to result, stated a cause of action against the employer outside the scope of the Workers' Compensation Act.

■ Based on the reasoning in *Speck v. Union Electric Company,* I conclude that a Missouri court would allow Tug to bring an action for contribution against Ford based on its allegation that Ford intentionally removed a safety device from the tow tractor.

### *Tug May Not Bring a Claim for Contribution Against Ford Based On the "Dual Capacity" Theory*

The dual capacity doctrine

> permits recovery in some circumstances over and above the statutory benefits provided by the Workers' Compensation law. If the employer designs, manufactures, distributes a defective product and places it in commerce and a third party places said machine into use at the employer's business and an employee is injured, he may recover under Workers' Compensation and sue for additional damages under tort law.

*Baker v. Armco, Inc.,* 684 S.W.2d 81, 82 (Mo.App.1984).

The "dual capacity" doctrine has not been adopted in Missouri. In *Gatlin v. Truman Medical Center,* 770 S.W.2d 510 (Mo.App.1989), and *Baker v. Armco, Inc.,* 684 S.W.2d 81 (Mo.App.1984), Missouri courts did not reach the issue of whether to adopt or reject the "dual capacity" doctrine.

In *Gatlin,* the court stated:

> [T]he doctrine has been applied in other states for the purpose of allowing an employee to sue his employers at law for work related injuries on the theory that the employer occupied a dual capacity and that the injury to the employee resulted from a breach of duty owed by the employer to the employee separate and distinct from the duty arising out of the employer-employee relationship.

770 S.W.2d at 511. In *Weber v. Armco, Inc.,* a case cited by Tug, the Oklahoma Supreme Court stated that in order for the dual capacity doctrine to apply, "the employer must step outside the boundaries of the employer-employee relationship, creating separate and distinct duties to the employee; the fact of injury must be incidental to the employment relationship." 663 P.2d 1221, 1227 (Okla.1983).

■ Ford's duties *to Hersan Coello* as employer and as manufacturer of component parts incorporated in the tow tractor used by him at the Ford plant are not separate and distinct nor was the fact of his on-the-job injury incidental to the employment relationship. Based on this analysis, and because Missouri has not adopted the "dual capacity" doctrine, plaintiffs are barred by § 287.120.1 from bringing a "dual capacity" action against Ford. Accordingly, Tug may not bring an action for contribution against Ford based on the "dual capacity" doctrine.

For these reasons, it is hereby ORDERED that:

1) Ford's Motion to Dismiss Tug's claim for indemnification based on Ford's role as a seller of component parts incorporated into the tow tractor is denied;

2) Ford's Motion for Summary Judgment on Tug's claim for indemnification based on Ford's alleged role as a designer of the tow tractor is denied;

3) Ford's Motion for Summary Judgment on Tug's claim for contribution based on its allegation that Ford intentionally removed a safety device from the tow tractor is denied; and

4) Ford's Motion for Summary Judgment on Tug's claim for contribution based on the "dual capacity" doctrine is granted.