# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2038

_____

Kembra Eubank, Individually and as   *
Next Friend of Jesse Eubank and   *
Spencer Eubank, minor children,   *
  *
   Plaintiff/Appellee,   *
  *   Appeal from the United States
  v.   *   District Court for the
  *   Western District of Missouri.
Kansas City Power & Light Company,   *
  *
   Defendant Third Party Plaintiff/   *
   Appellant,   *
  *
  v.   *
  *
United States of America,   *
  *
   Third Party Defendant/Appellee.   *

_____

Submitted: March 11, 2010
Filed: November 29, 2010

_____

Before BYE, COLLOTON, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

David Eubank, the husband of appellee Kembra Eubank, died as a result of an electrical burn he sustained while working for the United States General Services

Administration ("GSA"). Kembra Eubank, individually and on behalf of her two minor children, filed suit in Missouri state court against Kansas City Power and Light Company ("KCP&L"), the company that supplied electricity to the GSA facility where David Eubank was injured. KCP&L then filed a third-party petition seeking indemnity and contribution from David Eubank's GSA supervisors. Pursuant to 28 U.S.C. § 2679(d)(2), the United States was substituted as the third-party defendant in place of the GSA supervisors, and the case was removed to federal court. The district court[1] determined that it lacked subject matter jurisdiction over the third-party petition, because the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, did not waive the government's sovereign immunity in this case. The district court dismissed the third-party petition and remanded the Eubanks' claim against KCP&L to state court. We affirm.

I.

In August 2006, David Eubank was employed as an equipment specialist by the GSA office responsible for overseeing several unoccupied buildings owned by the GSA in Kansas City, Missouri. The buildings were known collectively as the Hardesty complex. KCP&L supplied electricity to the Hardesty complex through an electrical vault building located on the complex grounds.

The electrical vault building contains two sets of electrical switches, located approximately ten feet above the floor, with switch arms that can be pivoted. These switch arms control the flow of electricity to the vault building; when the arms are in an open position disengaged from the feeder cable that supplies electricity to the vault building, power does not flow to the equipment in the vault building. Even when the

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

switch arms are open, however, the feeder cables supplying electricity to the vault building and the switch arms remain electrified.

In 2006, GSA employees discovered that vandals broke into the vault building on at least two occasions and removed copper from the electrical equipment. On August 10, 2006, Roger Haynes, deputy director of the GSA office, directed David Eubank and another employee to enter the vault building to remove a transformer canister that was left by the vandals. Inside the vault building, David Eubank noticed a chain near the switch arms. When he went to remove the chain, an arc flash was generated, and he was severely burned. David Eubank died eight days later as a result of the burns he suffered at the Hardesty complex.

After her husband's death, Kembra Eubank elected to receive benefits from the United States, pursuant to the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. §§ 8101-8193. The Eubanks were granted FECA benefits by the Department of Labor retroactive to August 19, 2006. Kembra Eubank, individually and on behalf of her two minor children, also filed suit in Missouri state court against KCP&L for damages suffered as a result of the death of David Eubank.

KCP&L answered the complaint and filed a third-party petition for indemnity and contribution against David Eubank's GSA supervisors, Haynes and Larry Harkrader, the director of the field office in charge of the Hardesty complex. After determining that the GSA supervisors were acting in the scope of their government employment, the United States substituted itself as the third-party defendant and removed the case to federal court, pursuant to 28 U.S.C. § 2679(d)(2).

The United States moved to dismiss KCP&L's third-party petition for lack of subject matter jurisdiction. The district court granted the motion and dismissed KCP&L's indemnity and contribution claims for lack of subject matter jurisdiction. The court remanded the Eubanks' claim against KCP&L to state court. KCP&L

appeals, and we review the district court's decision *de novo. Green Acres Enters., Inc. v. United States*, 418 F.3d 852, 856 (8th Cir. 2005).

## II.

When the United States substitutes itself as a party in place of government employees who were sued, the FTCA is the exclusive remedy against the United States. *See* 28 U.S.C. § 2679(b)(1). Although the United States is generally immune from suit under the doctrine of sovereign immunity, "[t]he FTCA waives federal sovereign immunity and grants federal district courts jurisdiction over a certain category of claims against the United States." *Green Acres Enters., Inc.*, 418 F.3d at 856. The FTCA provides that for certain tort claims, "[t]he United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. To determine whether the United States would be liable as a private individual, the court looks to the "law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see also Barnes v. United States*, 448 F.3d 1065, 1066 (8th Cir. 2006). If a private person, under like circumstances, would be liable under the substantive law of the State where the act or omission occurred, then the FTCA waives sovereign immunity. *See Green Acres Enters., Inc.*, 418 F.3d at 856.

To establish a waiver of sovereign immunity, KCP&L must have a cause of action against the United States for indemnity and contribution under Missouri law. When determining the scope of Missouri law, we are bound by the decisions of the Supreme Court of Missouri. *See Hope v. Klabal*, 457 F.3d 784, 790 (8th Cir. 2006). If the Supreme Court of Missouri has not addressed an issue, we must predict how the court would rule, and we follow decisions from the intermediate state courts when they are the best evidence of Missouri law. *See In re Gen. Am. Life Ins. Co. Sales Practices Litig.*, 391 F.3d 907, 911-12 (8th Cir. 2004).

A.

Under Missouri law, claims for non-contractual indemnity generally require that the injured plaintiff have a claim of actionable negligence against the third party from whom indemnity is sought. *See Mo. Pac. R.R. v. Whitehead & Kales Co.*, 566 S.W.2d 466, 468 (Mo. 1978) (en banc). In this case, the third party is the United States. The Eubanks, however, could not assert a claim against the United States because they elected to receive FECA benefits, and FECA is the exclusive remedy against the United States for their claims based on David Eubank's death. *See* 5 U.S.C. § 8116(c). KCP&L contends that despite this bar, Missouri law would allow a claim for implied indemnity, because the government breached an "independent duty" it owed to KCP&L.

The Supreme Court of Missouri has implicitly recognized an exception to the "actionable negligence" requirement, and allowed a claim for indemnity against an employer of the plaintiff based on the employer's independent duty to the tortfeasor. In *McDonnell Aircraft Corp. v. Hartman-Hanks-Walsh Painting Co.*, 323 S.W.2d 788, 796 (Mo. 1959), the court allowed a suit for indemnification against an employer, even though the underlying plaintiff's suit against the employer would have been barred by the immunity provided by the workmen's compensation statute in Missouri. In *McDonnell*, the court concluded that despite workmen's compensation immunity, a third-party tortfeasor could assert an indemnity claim against an employer when the employer expressly agreed to perform a duty for the benefit of the tortfeasor but failed to do so. *See id.* at 794, 796. The court also stressed that workmen's compensation immunity did not bar the indemnity suit, because that suit would "not hold the employer liable for the personal injury or death of his employee but instead hold[] him liable for the breach of an independent duty to a third party which he expressly agreed to perform." *Id.* at 796.

KCP&L relies on the exception to the "actionable negligence" requirement that was recognized in *McDonnell*. The company asserts that even though the Eubanks have no claim of actionable negligence against the United States, KCP&L may bring an indemnity claim against the United States, because the government violated an independent duty it owed to KCP&L. KCP&L argues that like the employer in *McDonnell*, "by requesting and accepting electrical service[,] . . . the United States took on an obligation owed to KCP&L to maintain its equipment in a safe condition and to ensure that only trained and experienced employees were allowed into its substation."

The scope of the "independent duty" exception is not a picture of clarity. The Supreme Court of Missouri explained in *State ex rel. Maryland Heights Concrete Contractors, Inc. v. Ferriss*, 588 S.W.2d 489 (Mo. 1979) (en banc), that *McDonnell* allowed an indemnity action based on a duty that the employer defendant "expressly agreed (contracted) to perform with the non-employer," *id*. at 490, but that aside from the exception noted in *McDonnell*, the employer is not liable to the non-employer defendant. *Id.* In *Parks v. Union Carbide Corp.*, 602 S.W.2d 188 (Mo. 1980) (en banc), the court ruled that when there is a contract to indemnify, the contract will permit an indemnity claim against an employer for a third party's own negligence only if the contract clearly and unequivocally expresses the intent of the parties for the employer to indemnify the third party. *Id.* at 190-91.

Some decisions of the Missouri Court of Appeals have read *Parks* to narrow the exception set forth in *McDonnell* to cases in which there is an express agreement to indemnify. *Martin v. Fulton Iron Works Co.*, 640 S.W.2d 491, 496 (Mo. Ct. App. 1982); *Linsin v. Citizens Elec. Co.*, 622 S.W.2d 277, 281 (Mo. Ct. App. 1981). Others seem to conclude that an express agreement to assume specific duties for the benefit of a third party can trigger a duty to indemnify, even if there is no express agreement to indemnify. *Mo. Pac. R.R. Co. v. Gen. Mills, Inc.*, 743 S.W.2d 433, 435 (Mo. Ct. App. 1987); *cf. United States ex rel. U.S. Elevator Corp. v. Fru-Con Constr. Corp.*,

890 F.2d 1046, 1048-49 (8th Cir. 1989) (observing that *Parks* refined *McDonnell* when analyzing a "contractual duty to indemnify").

There is also some dispute about whether an "independent duty" that triggers a claim for indemnity must be rooted in an express agreement. A federal district court in *Coello v. Tug Manufacturing Corp.*, 756 F. Supp. 1258 (W.D. Mo. 1991), concluded that "[a]lthough the specific independent duty in *McDonnell Aircraft* was set forth in a written contract, the language used by the court is not so limited." *Id.* at 1263. The court thus concluded that "[u]nder Missouri law, an employer may owe an independent duty to a third party in the absence of a written indemnity agreement." *Id.* The court then held that Missouri law would recognize two duties rooted in the common law of products liability – the duty to supply defect-free component parts and the duty to use due care as a designer of a product it purchased – as independent duties that could serve as a basis for a claim for indemnity by a third-party tortfeasor against the plaintiff's employer who supplied components of a defective product. *See id.* at 1264-65.

It is unnecessary to decide the precise reach of Missouri law in this case. Even assuming the broad view of *Coello* that a claim for indemnity may arise from a duty that is based on neither an express agreement to indemnify nor even an express agreement to assume specific duties, there is no independent duty comparable to the product-liability duty recognized in *Coello* that is sufficient to trigger indemnity here. KCP&L asserts that the United States owed a duty to the company based on the government's status as KCP&L's customer. But the United States has not assumed a duty to KCP&L to protect government employees from hazardous electrical equipment simply by choosing KCP&L as an electrical provider. The government's duty *to its own employees* to maintain a safe workplace is not sufficient to establish an independent duty running from the government to KCP&L. *See Eagle-Picher Indus., Inc. v. United States*, 937 F.2d 625, 636-37 (D.C. Cir. 1991); *cf. United Air Lines, Inc. v. Wiener*, 335 F.2d 379, 404 (9th Cir. 1964).

Because the Eubanks have no claim of actionable negligence against the United States, and the United States did not breach an independent duty owed to KCP&L, the company's indemnity claim against the government is barred under Missouri law. The district court correctly dismissed the claim for lack of subject matter jurisdiction.

B.

KCP&L also asserts that the district court erred in dismissing its contribution claim for a proportionate allocation of liability between the United States and KCP&L. Under Missouri law, a contribution claim generally arises only when "both the party seeking contribution and the defendant against whom contribution is sought [are] . . . tortfeasor[s], originally liable to the plaintiff-injured party." *Gramex Corp. v. Green Supply, Inc.*, 89 S.W.3d 432, 442 (Mo. 2002) (internal quotation omitted). Although FECA's exclusive liability provision does not directly bar a third-party suit for contribution against the United States, *see Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 199 (1983), the provision can indirectly bar a claim for contribution by foreclosing the underlying plaintiff's suit against the United States. *See, e.g.*, *In re McAllister Towing & Transp. Co.*, 432 F.3d 216, 224-26 (3d Cir. 2005); *Walls Indus., Inc. v. United States*, 958 F.2d 69, 71 (5th Cir. 1992).

In this case, the United States was substituted for the GSA supervisors pursuant to the FTCA. *See* 28 U.S.C. § 2679(d)(2). As such, the action shall proceed "in the same manner as any action against the United States filed pursuant to [28 U.S.C. §] 1346(b)[,] . . . and shall be subject to the limitations and exceptions applicable to those actions." *Id.* § 2679(d)(4). Section 1346(b) provides that the government has waived sovereign immunity for injury or death caused by "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

-8-

The government and the Eubanks assert that no claim of actionable negligence exists between the Eubanks and the United States in this case, because the Eubanks accepted payments under FECA, and the exclusive remedy provision of the statute bars a negligence action against the United States. KCP&L argues that the Eubanks have a cause of action against the GSA supervisors under Missouri law, and that FECA's exclusive remedy provision does not apply.

KCP&L relies on *Knowles v. United States*, 91 F.3d 1147 (8th Cir. 1996), where this court held that when the United States is substituted as a party pursuant to 28 U.S.C. § 2679, it "is liable to the same extent *the employee* would have been absent immunity from suit," and that "[i]f *an employee* would not have had the benefit of a particular defense, . . . [then] neither does the United States." *Knowles*, 91 F.3d at 1150 (emphases added). KCP&L argues that because FECA does not bar a suit against co-employees, it would not bar a suit in this case where the United States is liable to the same extent as the GSA supervisors would have been liable.

*Knowles* was a divided decision, with a dissenting opinion urging that the United States is liable only to the extent that a private *employer* would be liable under the theory of *respondeat superior*. *Id*. at 1152 (Beam, J., dissenting). At least one other circuit has embraced the dissent, *see Haceesa v. United States*, 309 F.3d 722, 729 (10th Cir. 2002), and a subsequent opinion from our court also articulated the *respondeat superior* theory. *See St. John v. United States*, 240 F.3d 671, 676 (8th Cir. 2001) ("The FTCA is a limited waiver of sovereign immunity, allowing the federal government to be sued . . . under circumstances where the United States would be liable if it were a *private employer*.") (emphasis added). Without addressing the rule that one panel may not overrule another, the government seems to urge that *Knowles* has been superseded by *St. John*.

Whatever the merit and vitality of *Knowles*, it is distinguishable from this case. The court in *Knowles* acknowledged that "FECA supplants liability that would

-9-

otherwise exist under the FTCA for on-the-job injuries suffered by government employees," and rested its decision on the conclusion that nothing in *Knowles* "supplant[ed] the liability imposed by state law and the FTCA." 91 F.3d at 1150. Here, even though the United States was substituted for government employees, FECA is the "exclusive avenue of redress against the Government for [a government employee's] work-related injuries." *Ezekiel v. Michel*, 66 F.3d 894, 898 (7th Cir. 1995); *see also Benton v. United States*, 960 F.2d 19, 21-22 (5th Cir. 1992). At a minimum, where FECA is the sole source of the government's liability, the government is entitled to assert FECA immunity even though the GSA supervisors could not.

Because the Eubanks have no claim of actionable negligence against the United States, KCP&L cannot assert a claim for contribution under Missouri law. Therefore, the district court correctly dismissed KCP&L's contribution claim for lack of subject matter jurisdiction.

\*  \*  \*

The judgment of the district court is affirmed.

_____