**Palmroy P.K. BUSH, et al., Plaintiff,**

v.

**EAGLE–PICHER INDUSTRIES, INC., Defendant–Third–Party–Plaintiff–Appellee,**

v.

**UNITED STATES of America, Third–Party–Defendant–Appellant.**

**No. 89–15329.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 20, 1990.

Decided Feb. 28, 1991.

David S. Fishback, Asst. Director, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for third-party-defendant-appellant.

Joe G. Hollingsworth, Paul G. Gaston, Spriggs & Hollingsworth, Washington, D.C., for defendant-third-party-plaintiff-appellee.

Sidney S. Rosdeitcher, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Paul A. Zevnik, Kaye, Scholer, Fierman, Hays & Handler, Washington, D.C., for amicus.

Before FARRIS,* BEEZER and KOZINSKI, Circuit Judges.

KOZINSKI, Circuit Judge:

The Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), §§ 2671–2680 (1982), waives to a large extent the United States' sovereign immunity from tort liability. The Federal Employees' Compensation Act (FECA), 5 U.S.C. §§ 8101–8193 (1982), the workers' compensation scheme for federal employees, appears to contradict the FTCA, at least in part, by providing that a federal employee may not bring a tort suit against the government for a work-related injury. We consider the tricky interplay between the general waiver of sovereign immunity embodied in the FTCA and the specific exclusive liability provision set out in the FECA.

## Facts

While this case poses a complex legal question, the facts are straightforward. Plaintiffs in the underlying action are more than a hundred present and former civilian government employees, most of whom have built or repaired United States Navy ships at Pearl Harbor Naval Shipyard. Plaintiffs brought suit against an assortment of asbestos manufacturers, alleging that they contracted asbestos-related diseases while working at various government facilities in Hawaii. The asbestos manufacturers, in turn, filed third-party complaints against the United States, seeking contribution and/or indemnity for whatever amounts they may ultimately pay to plaintiffs. The government moved to dismiss the third-party complaints pursuant to Fed. R.Civ.P. 12(b); the underlying plaintiffs joined in this request. The district court dismissed most of the third-party claims, see In re All Asbestos Cases, 603 F.Supp. 599, 613 (D.Haw.1984); others have been dismissed by stipulation. See Memorandum Order of Dec. 29, 1986, at 3.

At this stage, only one theory of contribution remains. Third-party plaintiff Eagle–Picher[1] alleges that the government acted in a "dual capacity"—as both employer and vessel owner. While conceding that it cannot state a claim for contribution against the United States in its role as employer of the injured workers, Eagle maintains that it can state a valid contribution claim against the United States in its

metaphysically distinct role as owner of the vessels on which the employees worked and sustained their injuries. The district court agreed with Eagle and denied the government's motion to dismiss this claim. Order of Jan. 17, 1989, at 2–3. However, recognizing that other circuits have held similar claims barred as a matter of law, id. at 2, the district court certified this question for interlocutory appeal: Id. at 3–4. We granted the petition for interlocutory review and now reverse.

## Discussion

### I

▇▇▇ The United States is immune from suit except to the extent it has unequivocally consented to be sued. LaBarge v. County of Mariposa, 798 F.2d 364, 366 (9th Cir.1986), cert. denied sub nom., County of Mariposa v. United States, 481 U.S. 1014, 107 S.Ct. 1889, 95 L.Ed.2d 497 (1987). The FTCA operates as a limited waiver of this immunity, subjecting the government to tort liability within certain parameters. Specifically, the FTCA provides that the government is liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674 (1982). This waiver extends to third-party claims against the government, including claims for contribution. See United States v. Yellow Cab Co., 340 U.S. 543, 547–53, 71 S.Ct. 399, 402–06, 95 L.Ed. 523 (1951). The district court interpreted the language of the FTCA to mean that Eagle could state a valid claim for contribution against the United States under a dual capacity theory.

▇▇▇ In evaluating whether a private individual in like circumstances is amenable to suit, the FTCA directs us to look to the law of the state where the tort occurred. Id. As the tortious conduct alleged here took place at Pearl Harbor Naval Shipyard, we must identify the body of law that would govern a private shipyard "under like circumstances" in Hawaii.

The district court noted that Hawaii has a Workers' Compensation Law, see Haw. Rev.Stat. § 386–1, et seq. (1985) but that it does not apply to shipyard employees. As to these employees, Hawaii law expressly gives way to the federal workers' compensation scheme for private shipyard work-

---

* Judge Farris was drawn to replace Judge Bonner, District Judge for the Central District of California, who sat by designation.

1. While Eagle is the only third-party plaintiff in this appeal, it appears that other asbestos manufacturers have filed identical third-party claims that are being held by the district court pending our resolution of the issue here.

ers, the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–950 (1982). 603 F.Supp. at 604. The district court concluded that the LHWCA is the relevant body of law under the FTCA; in determining whether Eagle can bring its contribution claim against the United States, the district court examined whether the LHWCA would permit Eagle to bring an identical claim against a private shipyard.[2] Id. at 603–05 and n. 4. *See In re All Maine Asbestos Litigation (PNS Cases)*, 772 F.2d 1023, 1027 (1st Cir.1985), *cert. denied sub nom., Raymark Indus., Inc. v. Bath Iron Works Corp.*, 476 U.S. 1126, 106 S.Ct. 1994, 90 L.Ed.2d 675 (1986). We now run through this LHWCA analysis.

At first glance, the fate of an identical claim against a private shipyard under the LHWCA seems clear: It would fail. The LHWCA contains an exclusive liability provision. Section 905(a) provides that, because the LHWCA forces an employer to pay compensation to an injured employee regardless of fault, the employee is barred from bringing a tort action against the employer: "The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee...." 33 U.S.C. § 905(a) (Supp. V 1987). This is a classic *quid pro quo*, one "commonly found in workers' compensation legislation." *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 194, 103 S.Ct. 1033, 1036, 74 L.Ed.2d 911 (1983). The injured employee is assured of receiving compensation promptly, efficiently and in an amount sufficient to cover his medical expenses, regardless of fault. In return, he accepts the LHWCA as his exclusive means of recovery, thereby forfeiting his right to bring a

lawsuit that might ultimately have yielded more in damages if he could have proven that his employer was to blame. *See id.*

To the extent the LHWCA bars a first-party lawsuit by an injured employee against a shipyard, it also bars a third-party lawsuit for contribution from the shipyard. Hawaii law (by which we evaluate an analogous private party's amenability to suit) bars third-party actions against parties that are not directly liable. *Petersen v. City and County of Honolulu*, 51 Haw. 484, 462 P.2d 1007, 1008 (1970) (Contribution may only be had from a party if "the original plaintiff could have enforced liability against him, had he chosen to do so."); *see also In re All Asbestos Cases*, 603 F.Supp. at 606; *Scruggs v. Meredith*, 135 F.Supp. 376, 378 (D.Haw.1955); Haw.Rev. Stat. § 663–12 (1985) (defining joint tortfeasors).

A closer look at the LHWCA reveals that the preceding analysis is not entirely accurate. While section 905(a) appears to immunize shipyards from all employee lawsuits, there existed for a short time a chink in the statutory armor. At the same time section 905(a) bars an injured shipyard worker from bringing a tort action against his employer, section 905(b) expressly reserves the injured worker's right to bring a tort action against the owner of the vessel upon which he sustained his injuries. 33 U.S.C. § 905(b) (Supp. V 1987).[3] Generally, there is no conflict between these two provisions; shipyard workers are most often employed by independent stevedoring companies, thus the injured worker's employer is not commonly the same entity that owns the vessel. *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 528, 103 S.Ct. 2541, 2546, 76 L.Ed.2d 768 (1983). In "the typi-

---

**2.** The statement that the LHWCA is relevant for purposes of determining the government's liability toward plaintiffs under the FTCA does not, of course, mean that plaintiffs are actually governed by the LHWCA. Indeed, they are not. Federal employees obtain workers' compensation under the FECA and are specifically excluded from the LHWCA. *See* section 903(b) of the LHWCA ("No compensation shall be payable in respect of the disability or death of an officer or employee of the United States, or any agency thereof, or of any State or foreign government, or any subdivision thereof.") This section was formerly section 903(a) of the LHWCA. It was redesignated in 1984 with minor amendments.

See Pub.L. No. 98–426, §§ 3(a), (b), 98 Stat. 1639, 1640 (Sept. 28, 1984).

**3.** Specifically, section 905(b) provides: "In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person ... may bring an action against such vessel...." 33 U.S.C. § 905(b). The right to sue a vessel owner for negligence is based on the vessel owner's duty, under federal maritime law, to maintain the ship in a reasonably safe condition. *Scindia Steam Navig. Co. v. De Los Santos*, 451 U.S. 156, 163 n. 10, 164–67 and n. 13, 101 S.Ct. 1614, 1620 n. 10, 1620–22 and n. 13, 68 L.Ed.2d 1 (1981); *Kermarec v.*

cal tripartite situation," then, the injured shipyard employee is guaranteed fixed compensation from his employer, regardless of fault, plus he may recover tort damages from the vessel owner if his injury was caused by the negligence of the vessel. *Id.* at 530, 103 S.Ct. at 2547.[4]

In rare cases, though, a shipyard worker is employed directly by the vessel owner. The vessel owner thus operates in a "dual capacity," as both employer and owner. *See, e.g., id.* at 528, 103 S.Ct. at 2546. In such cases, the plain language of sections 905(a) and 905(b) conflict: Section 905(a) states that the shipyard is not amenable to suit because it employs the worker; section 905(b), though, provides that the worker can sue the vessel owner for negligence. *Id.* at 529–30, 103 S.Ct. at 2546–47. Faced with this conflict, the Supreme Court in 1983 created an exception to section 905(a)'s exclusive liability, holding that the injured worker's right to tort damages for negligence of the vessel owner under section 905(b) prevailed even where the vessel owner was also the employer. *Id.* at 532, 103 S.Ct. at 2548. Thus was born a loophole: After *Jones & Laughlin*, a private shipyard functioning in a dual capacity was immune from suit only in its role as employer; in its metaphysically distinct role as vessel owner, it remained subject to traditional tort liability, notwithstanding the exclusive liability provision of section 905(a). Because this loophole created potential liability to first-party plaintiffs, it

also left private shipyards open to third-party claims for contribution. *See* p. 448 *supra.*

■ This loophole didn't survive long. Sixteen months after the Court's decision in *Jones & Laughlin,* Congress amended section 905(b) to expressly bar suits by injured shipyard workers against "dual capacity" shipyards. Pub.L. No. 98–426, § 5(a)(1), 98 Stat. 1639, 1641 (Sept. 28, 1984).[5] Thus, it is no longer possible to circumvent the exclusivity of workers' compensation under the LHWCA by suing the shipyard in its capacity as vessel owner. Even though the loophole was quickly eliminated, it has a strong residual effect on this litigation. This is because Congress amended section 905(b) only prospectively; dual capacity suits can still be brought under *Jones & Laughlin* where the injuries were sustained before September 28, 1984. Consequently, the amendment has no bearing on this case, as it is uncontested that the asbestos-related diseases for which plaintiffs seek relief developed prior to the amendment.[6] For purposes of analyzing this case, therefore, we must assume that the LHWCA does not preclude a suit by an injured employee against a private shipyard acting in a dual capacity.

The district court put all this together and concluded that the United States could be sued under a dual capacity theory. 603 F.Supp. at 606, 612. Its reasoning can be summarized as follows: (1) the United States acted in a dual capacity as to plain-

*Compagnie Generale Transatlantique,* 358 U.S. 625, 630–32, 79 S.Ct. 406, 409–11, 3 L.Ed.2d 550 (1959). Section 905(b) preserves this common law remedy for shipyard workers covered by the LHWCA. *Scindia,* 451 U.S. at 165, 101 S.Ct. at 1621.

4. This does not mean that the injured employee is entitled to a double recovery. The shipyard, by paying workers' compensation regardless of fault, acquires a lien against the amount the employee ultimately recovers from the vessel owner. *Jones & Laughlin,* 462 U.S. at 530 n. 5, 103 S.Ct. at 2547 n. 5; *Eagle–Picher Indus. v. United States,* 846 F.2d 888, 895 n. 9 (3d Cir. 1988).

5. As amended, section 905(b) states in no uncertain terms:

If such person was employed to provide shipbuilding, repairing, or breaking services and such person's employer was the owner, owner pro hac vice, agent, operator, or charterer of the vessel, no such action shall be permitted, in whole or in part or directly or indirectly, against the injured person's employer (*in any capacity, including as the vessel's owner,* owner pro hac vice, agent, operator, or charterer) or against the employees of the employer. 33 U.S.C. § 905(b) (Supp. V 1987) (emphasis added).

6. Plaintiffs' contact with asbestos spans more than four decades, with some claims reaching as far back as World War II.

tiffs in that it owned both the Pearl Harbor Naval Shipyard, which employed plaintiffs, and the vessels upon which they worked; (2) under the FTCA, the United States can be sued if a private shipyard could be sued "under like circumstances"; (3) under the LHWCA, a private shipyard could be sued if it acted in a dual capacity as employer and vessel owner; (4) thus, the United States can be sued under a dual capacity theory. *See id.* at 603, 605–06.

## II

■ The government has no problem with the first three steps in the district court's analysis, but hotly contests the fourth. While conceding that there was a short-lived loophole in the LHWCA that permitted injured employees temporarily to circumvent the statute's exclusive liability provision and bring dual capacity suits against private shipyards, the government argues that it does not follow that dual capacity suits can be brought against shipyards owned by the United States. This is because the FECA, the workers' compensation statute that governs federal shipyard employees such as the plaintiffs, has at all times directly barred them from suing the government under a dual capacity theory.

The FECA has an exclusive liability provision, section 8116, which precludes tort suits against the federal government for work-related injuries.[7] Unlike the LHWCA, the FECA does not contain a conflicting provision that preserves employ-ees' common law right to sue a negligent vessel owner in tort; the FECA's exclusive liability scheme does not, and never has had, the loophole that permitted dual capacity suits. Thus, section 8116 indisputably bars dual capacity tort actions against the government.[8]

■ Because FECA section 8116 immunizes the government from first-party liability in this case, on a dual capacity theory or any other theory, the government argues that it also cannot be liable for third-party claims. The Supreme Court discussed the interplay between FECA section 8116(c) and third-party claims against the government under the FTCA in *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983). It held that FECA section 8116(c) does not *directly* bar third-party indemnity claims against the United States; section 8116(c) was only intended by Congress to govern the rights of federal employees and their dependents. *Id.* at 196, 199, 103 S.Ct. at 1037, 1039. The Court, however, left open the possibility that section 8116 might *indirectly* bar third-party claims. It made clear that the third party must be able to identify the substantive law that affirmatively grants it the right to proceed against the government before the claim can go forward. See *Bell Helicopter v. United States*, 833 F.2d 1375, 1378 (9th Cir.1987) ("The Court [in *Lockheed* ] found that al-

---

**7.** Section 8116(c) provides:
The liability of the United States or an instrumentality thereof under this subchapter ... with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee ... in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute.
5 U.S.C. § 8116(c) (1988).

**8.** The government also suggests that section 903(b) (formerly section 903(a)) of the LHWCA, the provision precluding government employees from recovering under the LHWCA, also bars dual capacity suits against the government. This argument is misguided. Section 903(b) merely says that the federal government and its

employees are not part of the LHWCA scheme. This would preclude dual capacity suits against the government only if section 905(b) actually *created* the right to sue a vessel owner in tort; this additional remedy, unique to the LHWCA, would be unavailable to federal shipyard employees. But we have seen that the LHWCA does not *create* the right to sue a vessel owner for negligence. This right derives from federal common law and section 905(b) simply preserves it, creating an exception to the LHWCA's otherwise exclusive workers' compensation remedy. *See* note 3 *supra.* Section 903(b) therefore does not address, and certainly does not preclude, the rights of federal employees to pursue remedies that are available at common law. FECA section 8116 is what bars federal employees from pursuing this remedy against government-owned shipyards.

though the FECA permits a third-party suit, it does not confer the underlying substantive right to sue. The right to sue must exist independently of the FECA's passive allowance of the exercise of that right."); *LaBarge*, 798 F.2d at 367–69.[9]

Here, the government argues that the applicable substantive law does *not* authorize Eagle's third-party claim. Section 8116 of the FECA renders the United States immune from tort liability to its employees who are injured. Under Hawaii law, third-party claims cannot be maintained where there is no first-party liability. *See* p. 448 *supra*. Hence, the government argues, Eagle's third-party claim against the government is precluded.

## III

Eagle concedes that the plain language of the FECA leaves no room for doubt; a tort action filed against the government by an injured federal employee would be summarily dismissed because the FECA provides that workers' compensation is the employee's exclusive remedy. But, Eagle argues, a similar lawsuit alleging a cause of action under the FTCA cannot be dismissed. This is because the United States stands in the shoes of a private shipyard for the purpose of FTCA liability, and a private shipyard is subject to dual capacity suits under the LHWCA.

This is precisely the argument that persuaded the district court to rule in Eagle's favor. *See* pp. 448–449 *supra*. It determined that it could ignore the fact that the FECA unequivocally precludes tort suits against the government because Eagle had chosen to cast its claim under the rubric of the FTCA: "The FTCA provides that the United States will only be liable as if a 'private person.' Therefore, provisions of workers' compensation statutes, such as [§ 903] of the LHWCA, which exclude coverage of federal employees, are inapplicable in the analysis." *Id.* at 603 n. 4. In

short, the district court held that Eagle could avoid the preclusive effect of a statute designed by Congress specifically to bar these kinds of claims, merely by pursuing its third-party complaint under the auspices of the FTCA.

Not surprisingly, the government balks at this analysis, insisting that it goes too far, too fast. The FTCA directs courts to treat the government not merely as a private party, but as a private party "under like circumstances." The government argues that the district court underestimated the significance of this phrase as used in the FTCA. It points out that the circumstances most relevant to this inquiry are those that directly affect tort liability. FECA section 8116(c) is thus the most relevant circumstance to be taken into account, in that it immunizes the United States from tort liability pursuant to an arrangement by which it pays generous compensation to injured employees regardless of fault. This, the government argues, is a key respect in which the United States is not "like" a private shipyard.

We agree with the government. The immunity from suit created by the FECA is, without a doubt, a highly relevant circumstance that must be taken into account; in fact, it may be the single most important circumstance in this case. *Accord Eagle–Picher*, 846 F.2d at 893 n. 8; *In re All Maine Asbestos Litigation*, 772 F.2d at 1028; *Lopez v. Johns Manville*, 649 F.Supp. 149, 154–55 (W.D.Wash.1986). In its current form, the LHWCA does what Congress intended it to do: it bars tort suits against private shipyards in exchange for requiring them to pay workers' compensation to injured employees regardless of fault. By some quirk of drafting, however, there was at one time a glitch in the statutory scheme that some clever lawyers found and used to frustrate Congress's intent by bringing tort actions against private shipyards where they were also the

9. The district court correctly recognized that *Lockheed* does not create a right to contribution from the government, but rather requires consideration of the applicable substantive law to

decide whether a right to contribution is available under the FTCA. *See* 603 F.Supp. at 603 n. 3.

vessel owner. There's nothing wrong with that; lawyers are paid to read statutes carefully and ensure their clients the benefits of the words written by Congress. But this does not mean the same loophole can be used against the government, whose liability is governed by an additional statute in which no glitch existed. We cannot strain the FTCA's analogy to a private party so as to render the United States potentially liable for actions which Congress has in no uncertain terms directed us not to entertain. *See In re All Maine Asbestos Litigation,* 772 F.2d at 1029; *accord Weyerhaeuser S.S. Co. v. United States,* 372 U.S. 597, 601 n. 5, 83 S.Ct. 926, 929 n. 5, 10 L.Ed.2d 1 (1963); *Eagle–Picher,* 846 F.2d at 894.

■ It boils down to this: As a result of a short-lived loophole in the LHWCA, a private shipyard could be subjected to a dual capacity suit. The United States, though, by virtue of FECA section 8116(c), cannot and never could. *Lopez,* 649 F.Supp. at 155. Because the government is unlike a private shipyard in this crucial respect, we hold that, under the FTCA, the analogous "private individual under like circumstances" is not a private shipyard subject to the dual capacity loophole set out in *Jones & Laughlin;* rather, it is a private shipyard subject to a workers' compensation scheme, like most workers' compensation schemes, without such a loophole.

■ Eagle contends that it is improper to consider statutes that immunize only the government. Its reasoning is that the FTCA instructs courts to treat the United States as "a *private individual* under like circumstances," and no private shipyard would ever have FECA immunity. The flaw in this reasoning is that there need not be an *actual* private party "under like circumstances" as the United States; the statute merely requires us to analogize to a hypothetical private party that could stand in the shoes of the United States "under like circumstances." It is not at all implausible to posit a hypothetical shipyard owner with FECA-like immunity; indeed, most state compensation schemes *do* operate

precisely in this manner. We therefore reject Eagle's contention, finding strong support in our decisions in *Bell Helicopter* and *Labarge.* In both cases, we considered the interplay between the FECA and the FTCA and concluded that, notwithstanding the analogy to a "private individual," it was appropriate to afford the government FECA-like immunity:

Because the federal government could never be exactly like a private actor, a court's job in applying the [FTCA] standard is to find the most reasonable analogy. In view of the fact that the FECA is comparable to state workmen's compensation laws, most courts that have considered the issue since *Lockheed* have held that—all other things being equal—the United States should be entitled to the same immunity from suit enjoyed by a private employer covered by state workmen's compensation laws.

*LaBarge,* 798 F.2d at 367; *see also Bell Helicopter,* 833 F.2d at 1378.

■ Our focus on "all other things being equal" tells us that, where the government and its private party counterpart diverge in a significant respect, that circumstance must be taken into account in determining what is the "most reasonable analogy." Given that the FECA has always exempted the United States from dual capacity suits, the analogy to a private shipyard subject to the LHWCA breaks down in an important respect. Accordingly, the most reasonable analogy here is not to a private shipyard subject to the LHWCA and its dual capacity loophole, but rather a private shipyard subject to a typical state workers' compensation scheme, analogous to the FECA, that bars all tort suits and contains no loopholes.

We take comfort in that our holding closely resembles the Supreme Court's well-reasoned decision in *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665. There, the Court held that, despite the FTCA's "private individual" analogy, a third party could not state an indemnity claim against the government for its active negligence resulting in serious injuries to a service-

man. An important factor in the Court's decision was that the government had already paid generous compensation to the injured man under the Veterans' Benefits Act—"a statutory 'no fault' compensation scheme." 431 U.S. at 671, 97 S.Ct. at 2058. The Court emphasized that this compensation scheme, much like the FECA scheme at issue here, "serves a dual purpose: it not only provides a swift, efficient remedy for the injured [person], but it also clothes the Government in the protective mantle of the Act's limitation-of-liability provisions." Id. at 673, 97 S.Ct. at 2058 (internal quotations omitted). Here, as in Stencel Aero, to permit the third-party claim "would circumvent this limitation, thereby frustrating one of the essential features" of the statute. Id. For us to permit Eagle to bring a contribution claim against the government on a dual capacity theory, notwithstanding the explicit bar to such a claim posed by FECA section 8116(c), would be " 'to judicially admit at the back door that which has been legislatively turned away at the front door. We do not believe that the [Federal Tort Claims] Act permits such a result.' " Id. (quoting Laird v. Nelms, 406 U.S. 797, 802, 92 S.Ct. 1899, 1902, 32 L.Ed.2d 499 (1972)).

## Conclusion

The district court granted, for the most part, the government's motion to dismiss Eagle's third-party contribution and indemnity claims. In denying the government's motion to dismiss Eagle's "dual capacity" contribution claim, however, the district court reasoned that, because a private shipyard could have been sued under a dual capacity theory, the FTCA permitted a similar suit against the United States. Recognizing that its ruling was at odds with the decisions of several other circuits, the district court certified the question to us for interlocutory appeal. Having waded through this murky area of law, we reverse

the district court's denial of the government's motion to dismiss.[10]

10. In light of our holding, we do not address the government's alternative argument that Eagle's claim should be dismissed on the ground that dual capacity suits are cognizable under the LHWCA only if they fall within the court's admiralty jurisdiction, and that Eagle failed to demonstrate the "maritime nexus" that is the predicate for the exercise of such jurisdiction.