William KNOWLES and Jane Knowles, on behalf of themselves and as guardians of their minor son, Kris Knowles, Appellants,

v.

UNITED STATES of America, Appellee.

Nos. 93–3074, 93–3219.

United States Court of Appeals, Eighth Circuit.

Submitted April 11, 1994.

Decided July 14, 1994.

John Joseph Delaney, Rapid City, SD, argued (Wayne F. Gilbert on the brief), for appellant.

Bonnie P. Ulrich, Sioux Falls, SD, argued (Craig P. Gaumer on the brief), for appellee.

Before RICHARD S. ARNOLD, Chief Judge, HENLEY, Senior Circuit Judge, and BEAM, Circuit Judge.

RICHARD S. ARNOLD, Chief Judge.

William and Jane Knowles brought two claims under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b): one on behalf of their son, Kris, who was permanently injured when he was treated as an infant at the Ellsworth Air Force Base Hospital, and one in their own right for emotional distress and loss of consortium. The United States admitted liability on medical-malpractice grounds and moved the District Court to enter a judgment for $1 million, the amount allowed by South Dakota's malpractice-damages cap. South Dakota Codified Laws (S.D.C.L.) 21-3-11. The plaintiffs contested the applicability of the damages cap on a number of different grounds. The District Court held that the cap applied. [829 F.Supp. 1147.] It awarded the Knowleses $1 million for Kris's injuries and nothing for the Knowleses' claims of loss of consortium. The Knowleses appealed. The ultimate disposition of this case depends on the resolution of several issues, some of which involve novel questions of state law. We affirm in part and certify the remaining questions to the South Dakota Supreme Court.

## I.

On July 17, 1989, Kris Knowles, who was then twelve days old, was admitted to the Ellsworth Air Force Base Hospital near Rapid City, South Dakota, for treatment of a fever and to rule out sepsis.[1] Kris's condition seemed to improve over the next three days, and Dr. Kishaba, the treating physician, discharged him on the morning of July 20.[2] In fact, the child's temperature, as re-

---

1. Sepsis is the presence of pathogenic organisms, or their toxins, in the bloodstream or tissues.

2. Several different medical employees assisted with Kris's treatment. In addition to the two nurses and the treating physician, Kris's condition was monitored by medical service specialists (MSSs). The MSSs are enlisted personnel who receive approximately eight weeks of training and whose job includes taking vital signs and

corded by the Medical Service Specialists (MSSs), had been dropping throughout the night before his discharge: at 4:00 p.m., Kris's temperature was 97.8 degrees; by 2:00 a.m. it was 94.9 degrees; and by 6:00 a.m. it was 95.3 degrees. According to hospital procedures, the MSSs were supposed to report abnormally high or low temperatures. However, they did not report either of the last two temperatures, which were abnormally low, to the nurses or to the attending physician. Kris was released the next day despite his low temperature. Following discharge, Kris was taken to the Ellsworth AFB Pediatric Clinic for a blood test. There, Jane Knowles expressed concern about Kris's temperature and coloring. The baby's temperature was 92.9 degrees, and Kris was immediately readmitted to the hospital for warming and other treatment for hypothermia. Despite this treatment, Kris developed hypoglycemia and suffered respiratory arrest, which in turn caused severe, irreversible brain damage.

The Knowleses brought this action on behalf of their son to collect damages for his injuries and medical care and also brought suit in their own names, as Kris's parents, for emotional distress and loss of consortium. The government admitted liability for the negligence of its employees and moved for an award in the amount of $1 million, pursuant to S.D.C.L. 21-3-11.[3]

The District Court rejected the Knowleses' argument that S.D.C.L. 21-3-11 was unconstitutional and found that it was valid under both the state and federal constitutions. It then rejected the remainder of the Knowleses' contentions. The Court first held that the cap applied to the United States and to Medical Service Specialists. It reasoned that MSSs provide services akin to those offered by other health-care professionals; therefore, the MSSs fit the definition of a "practitioner of the healing arts." Additionally, because

the United States was the only named defendant and could be held liable only to the extent a private party could be, the District Court held that the cap protected the government. The Court also found that the cap did not apply separately to each cause of action, nor did it apply separately to each plaintiff or to each tortfeasor. Finally, the District Court found that the Knowleses had only one cause of action under South Dakota law—that for Kris Knowles's damages—because South Dakota has not previously allowed damages for emotional distress or loss of consortium due to injury of a minor child.

## II.

■ We review the District Court's determinations of state law *de novo*. Although we withhold judgment for the moment as to whether the District Court should have awarded more, we start by affirming the Court's award of $1 million to the plaintiffs. Even if the South Dakota damages cap applies to the causes of action here, the Knowleses will be entitled to receive at least this much, as the government concedes. Therefore, the District Court correctly awarded the Knowleses $1 million in damages, which should be paid forthwith. Nonetheless, whether the Knowleses are entitled to more remains a question. The government claims that they are not because South Dakota's damages-cap statute clearly applies to the malpractice that occurred here. The Knowleses contend that the damages cap does not apply, or, if it does, that they are still entitled to more than one million-dollar award.

■ First, the Knowleses argue that since they have brought two separate causes of action—one for Kris's damages and the other for emotional distress and loss of consortium—the cap, if it applies at all, applies

---

providing patient services such as back rubs and linen changes.

**3.** S.D.C.L. 21-3-11 provides:
  In any action for damages for personal injury or death alleging malpractice against any physician, chiropractor, dentist, hospital, registered nurse, certified registered nurse anesthetist, licensed practical nurse or other practitioner of the healing arts under the laws of this state, whether taken through the court system or by binding arbitration, the total damages which may be awarded may not exceed the sum of one million dollars.

individually to each of their claims.[4] By the same token, the Knowleses argue that the cap applies individually to each tortfeasor and to each plaintiff. The Knowleses, therefore, claim that they are entitled to one million dollars for Kris's injuries and, assuming proper proof, one million dollars for their own emotional-distress and loss-of-consortium claim. They also argue that each of the three plaintiffs—William, Jane, and Kris—could be individually entitled to damages up to one million.[5]

In a recent decision, *Sander v. Geib, Elston, Frost Professional Ass'n.*, 506 N.W.2d 107, 126–27 (S.D.1993), the South Dakota Supreme Court held that the S.D.C.L. 21–3–11 damages cap applied separately to each of the two causes of action pleaded, negligence and wrongful death, because each action involved different plaintiffs and different remedies. The *Sander* Court went on to state that consolidation of the two actions into one suit would "not alter the separate damages cap applicable to each action and each party." *Id.* at 127.

On the basis of this language, which was not available to the District Court when it decided this case, plaintiffs argue that each of their valid causes of action[6] should be assessed independently to determine whether the damages under that particular cause of action equal or exceed $1 million. On the other hand, other language in *Sander* indicates that it may be limited to the two precise actions (personal injury and wrongful death) that the statute refers to expressly.

*Ibid.* We believe this question is best addressed to the Supreme Court of South Dakota, especially since we are certifying to that Court certain questions of state constitutional law, for reasons explained later in this opinion. The same is true of the question whether each plaintiff might be eligible under the statute for a separate award of a million dollars.

■ The Knowleses' second argument is that the United States is not protected by S.D.C.L. 21–3–11. They base this assertion on the holding in *Sander, supra*, 506 N.W.2d at 124–26, that a medical corporation is not a "practitioner of the healing arts." The *Sander* Court stated that a "practitioner of such an art is one who engages in, or offers to engage in, or holds himself or herself out as qualified to engage in such an art, and holds a legal and unrevoked license...." *Sander*, 506 N.W.2d at 125 (citations omitted). Therefore, only a natural person can be a "practitioner" for purposes of S.D.C.L. 21–3–11. The Knowleses argued below that the United States was not a natural person and was not, therefore, covered by the statute. The Knowleses also argued that the United States is not protected since the MSSs who cared for Kris cannot qualify as "practitioner[s] of the healing arts," because they are not licensed under South Dakota law (and could not become so). The Knowleses concede that the doctors, the nurses, and the VA Hospital are covered by S.D.C.L. 21–3–11; however, they claim, since the MSSs are not

4. William and Jane Knowles may have a cause of action in addition to those listed here. S.D.C.L. 25–7–6.1 obligates parents to pay "for the necessary maintenance, education and support of the child," and we read this language to include medical expenses. Therefore, it may be that the Knowleses have a separate cause of action for Kris's medical expenses, either in addition to Kris's cause of action, which is alleged in the complaint, or in their own right as the primary obligors for Kris's medical bills. We merely note this issue and do not decide at this time whether the Knowleses are primarily or secondarily liable for Kris's medical expenses.

5. Additionally, should their damages on these claims be more than one million dollars, the Knowleses argue that they should be allowed to collect up to a million dollars from each of the tortfeasors, who they allege are the doctor, the

two nurses, and the MSSs. We reject this argument, as did the District Court, because there is only one named defendant in an FTCA action, the United States.

6. The Knowleses claim that they are entitled to damages for emotional distress and loss of consortium of their son. However, the South Dakota courts have not held that a cause of action exists for emotional distress and loss of consortium due to serious injury of a minor child. If no such cause of action exists under South Dakota law, then the Knowleses have only one cause of action, that for Kris's injuries. Although the parties argue state law from other jurisdictions in support of their respective positions, the issue remains open under South Dakota law. We certify this question, among others, to the South Dakota Supreme Court.

protected by the statute, neither is the government.

The Knowleses' first assertion is without merit. The United States, under the FTCA, is held liable to the same extent as a private party. In this case, the United States is standing in the shoes of a hospital, a doctor, two nurses, and the MSSs. None of these actors is a professional corporation, and all save the MSSs are clearly covered by S.D.C.L. 21–3–11. Therefore, the United States shares in the protection offered these individuals by S.D.C.L. 21–3–11 to the same extent the individuals would if they were sued directly.[7]

Finally, the Knowleses argue that the statutory cap is unconstitutional under the South Dakota Constitution. In *Sander, supra,* 506 N.W.2d at 127–28, the South Dakota Supreme Court expressly declined to decide the constitutionality of S.D.C.L. 21–3–11 because it had already disposed of the case on other grounds. The only hint this Court has as to the direction the state courts might take is Justice Sabers's separate concurrence in *Sanders.* Justice Sabers stated that he believed S.D.C.L. 21–3–11 violated the "open courts" and "jury trial" provisions of the South Dakota Constitution, as well as certain other sections of S.D. Const. art. VI. *Sander, supra,* 506 N.W.2d at 128–29 (Sabers, J., concurring in the result). Given that one Justice believes S.D.C.L. 21–3–11 is unconstitutional, and the rest of the state Supreme Court has declined to address the question, we do not agree with the government that this area of South Dakota law is "settled."

We should not try to determine the application of South Dakota's Constitution to S.D.C.L. 21–3–11 in the absence of substantial South Dakota case law on the point.

Additionally, we should not attempt to extrapolate from the laws of other states in deciding how South Dakota would interpret its own Constitution. A proper deference to the authority of the Supreme Court of South Dakota counsels us to leave it to that Court to make that determination before we decide how to apply the statute in this instance. South Dakota has a certification procedure in place which allows us to request the South Dakota Supreme Court to make decisions as to state law. We now exercise our authority to certify questions to the state Supreme Court.[8]

Some of the other questions raised by this appeal that are not constitutional in nature likewise have not been addressed by the South Dakota courts. Since we are asking the state court to assess the constitutionality of S.D.C.L. 21–3–11's damages cap, we also ask the South Dakota Supreme Court to answer the other state-law questions listed below.

### III.

Pursuant to South Dakota Rule of Appellate Procedure 47, we hereby certify the following questions to the South Dakota Supreme Court:

(1) Is the S.D.C.L. 21–3–11 damages cap unconstitutional under South Dakota's Constitution? Specifically, is it violative of any of the following portions of the South Dakota Constitution: S.D. Const. art. VI, sec. 6, the right to a jury trial; S.D. Const. art. VI, secs. 2 and 18, due process and equal protection of law; S.D. Const. art. VI, sec. 20, the open-courts and remedy-for-injury provision; or S.D. Const. art. III, sec. 23(9), forbidding

---

7. South Dakota law is not clear as to whether MSSs are protected by the damages cap. Because we are certifying the question of the statute's constitutionality to the South Dakota Supreme Court, we will take the opportunity to certify this question as well. Once the South Dakota Court determines whether the MSSs fall under the statute's definition of "practitioners of the healing arts," this Court will be able to evaluate the impact of that decision on the liability of the United States.

8. We are not saying the District Judge abused his discretion in not certifying these questions to the state court. We review questions of state law *de novo,* and we believe that we accordingly have an independent discretion of our own to decide whether certification is appropriate. The presence of state constitutional questions seems to us an especially important factor. Only the Supreme Court of South Dakota can answer such questions with final authority, and the answers are likely to have far-reaching effects. *Cf. Lucas v. United States,* 807 F.2d 414 (5th Cir.1986).

certain special legislation?[9]

(2) Are Medical Service Specialists "practitioners of the healing arts" for purposes of S.D.C.L. 21–3–11?

(3) Does South Dakota law recognize emotional distress or loss of consortium for injuries to a minor child as a separate cause of action?

(4) Does the statutory limitation on damages apply separately to each of the three plaintiffs in this case and each of the two separate causes of action pleaded?

The facts relevant to the questions certified, as required by S.D.Rules App.Proc. 47(c)(2), are outlined in Part I of this opinion. We will retain this case on our docket until such time as the South Dakota Supreme Court answers the certified questions or declines to do so.

9. The separation-of-powers provision of the South Dakota Constitution, art. II, was also discussed at the oral argument in this case. The Knowleses did not argue this provision to the District Court or in their brief in this Court. We therefore do not include it in the questions we are certifying.