Nos. 93-3074SD, 93-3219SD

William Knowles and Jane          *
Knowles, on behalf of             *
themselves and as guardians       *
of their minor son,               *
Kris Knowles,                     *
                                  *   On Appeal from the United
          Appellants,             *   States District Court
                                  *   for the District of
     v.                           *   South Dakota.
                                  *
                                  *
United States of America,         *
                                  *
          Appellee.               *


_____

            Submitted:  April 24, 1996
                Filed:  August 5, 1996
_____


Before RICHARD S. ARNOLD, Chief Judge, HENLEY, Senior Circuit Judge, and
     BEAM, Circuit Judge.
_____


RICHARD S. ARNOLD, Chief Judge.


     When this case was initially submitted to this Court, we held that
its disposition involved novel questions of state law.  Thus, we certified
four questions to the Supreme Court of South Dakota.  Knowles v. United
States, 29 F.3d 1261 (8th Cir. 1994) (Knowles I).  We have received answers
to those questions and the parties' briefs in response to those answers,
and are prepared to dispose of this case without further argument.

I.

The plaintiffs, William and Jane Knowles, brought this case under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), on behalf of their son, Kris. They allege that Kris was permanently injured by negligent treatment he received at the Ellsworth Air Force Base Hospital. They also sued in their own right, asserting a cause of action for emotional distress and loss of consortium.

Twelve-day-old Kris Knowles was admitted to the Ellsworth Air Force Base Hospital on July 17, 1989, for treatment of a fever. His condition improved over the next three days. However, during the night preceding Kris's discharge, his temperature began to fall. In fact, by 6:00 a.m., it was only 95.3 degrees. Nevertheless, Kris was discharged on July 20, 1989.

Among those persons caring for Kris in the hospital were medical services specialists. These enlisted persons are roughly the equivalent of civilian nurse's aides and are charged with tasks such as taking vital signs and providing patient services. It was the responsibility of the medical services specialists on duty to take and record Kris's temperature, which they did. They were also to report any abnormally high or low temperatures to the nursing staff or to the attending physician. The Knowleses allege that the medical services specialists failed to perform this duty the night before Kris's discharge.

Following Kris's release, he was taken to the Ellsworth AFB Pediatrics Clinic for a blood test. There it was discovered that Kris's temperature had fallen to 92.9 degrees. He was immediately readmitted to the hospital for warming and other treatment for hypothermia. This treatment notwithstanding, Kris developed hypoglycemia and suffered respiratory arrest, resulting in severe and irreversible brain damage.

The Knowleses then filed this lawsuit, alleging medical negligence against the hospital and its employees. The United States admitted liability, but moved for damages to be limited to $1 million pursuant to South Dakota's malpractice-damages cap. S.D.C.L. 21-3-11. The District Court, in granting that motion, held that the cap applied to medical services specialists and did not violate the South Dakota constitution. Moreover, it held that the cap did not apply separately to each cause of action, plaintiff, or tortfeasor. Finally, the District Court held that the Knowleses had no cause of action for emotional distress or loss of consortium due to injury of a child under South Dakota law, and dismissed that count.

The Knowleses appealed that ruling to this Court. Noting that this case turned on several novel questions of state law, we certified four specific questions to the South Dakota Supreme Court. We have received answers to those certified questions, and will now address the issues remaining in this case.

II.

The first question certified to the South Dakota Supreme Court was whether the $1 million damages cap in S.D.C.L 21-3-11 violated the South Dakota Constitution. Knowles I, 29 F.3d at 1265. That Court held that the cap did, indeed, violate the Due Process Clause of the South Dakota Constitution. Knowles v. United States, 544 N.W.2d 183, 195 (S.D. 1995) (opinion of Gilbertson, J.) (Knowles II). We therefore reverse that portion of the District Court's order limiting damages in this case to $1 million.

That is not the end of the limitation-of-damages question, however. Because the statute containing the $1 million cap, is "wholly unconstitutional," Knowles II, 544 N.W.2d at 204, a predecessor statute, the Supreme Court of South Dakota held, a statute that the invalid statute purported to repeal, is revived,

-3-

and "remains in full force and effect." Ibid. Under that predecessor statute, 1985 S.D. Sess. Laws ch. 167, non-economic or general damages are capped at $500,000, while economic or special damages have no cap. If a cap applies in this case, it is the cap established by this revived statute. Where the negligence of the doctors, nurses, and hospital are concerned, the cap indisputably applies. The medical services specialists are a different story.

Among those medical professionals protected by the $1 million cap were "practitioners of the healing arts." Whether medical services specialists were encompassed by this term was the second question certified to the South Dakota Supreme Court. Knowles I, 29 F.3d at 1266. This question was crucial because, as is the case with the revived statute, all of the other actors who could feasibly be responsible for Kris's injuries were unquestionably subject to the $1 million cap, id. at 1265, assuming its validity.

The South Dakota Supreme Court held that this question was made moot by its disposition of the first question. Knowles II, 544 N.W.2d at 192 (opinion of Sabers, J.). The revived statute does not include the language at issue. It lists hospitals, doctors, and nurses as beneficiaries of the cap, but does not go on to use the general phrase, "practitioners of the healing arts." The United States, nevertheless, argues that the $500,000 cap on general damages still applies. It reasons that, because hospitals are covered, and the medical services specialists are hospital employees whose negligence will be charged to the hospital, the statute should be construed to limit the liability of medical services specialists. We reject this argument for the same reason that we rejected the Knowleses' argument that the United States was not protected by the original cap in our first opinion. Under the FTCA, the United States will be held liable to the same extent as a private party. It is "standing in the shoes of . . . the [medical service specialists]. Therefore, the United States shares in the protection [of the statute] to the same extent the

individuals would if they were sued directly." Knowles I, 29 F.3d at 1265. It follows, then, that if medical services specialists, individually, are not protected by the statute, neither is the United States shielded from the consequences of their negligence.

Our Brother Beam would have us hold that this conclusion is foreclosed by the Westfall Act, 28 U.S.C. § 2679(b)(1), (d)(2), and the Gonzalez Act, 10 U.S.C. § 1089. He reasons that, because medical services specialists are immune from suit under these acts, liability for the United States attaches only by way of the Hospital. Given that hospitals are included in the revived statute, the cap must apply. Notably, the United States did not raise this argument before us in either its briefs or its oral argument.

Employees of the United States, as the dissent points out, may not be sued for torts they commit while acting within the scope of their employment. United States v. Smith, 499 U.S. 160, 165 (1991). Rather, a plaintiff's "remedy provided by the [FTCA] . . . is exclusive." 28 U.S.C. § 2679(b)(1); 10 U.S.C. § 1089. The United States, under the FTCA, "shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The effect of these provisions taken together is quite clear. When someone is injured by a tort committed by an employee of the United States who is acting within the scope of his employment, that employee cannot be sued. Rather, the injured person must sue the United States which is liable in its employee's stead.

That is what we mean by saying that the United States stands in the shoes of the medical services specialists. It has, through the FTCA and the Westfall and Gonzalez Acts, removed liability from its employees and placed it on itself. It is liable to the same extent the employee would have been absent immunity from suit. If an employee would not have had the benefit of a particular defense,

-5-

a damages cap for example, neither does the United States.  Medical services specialists do not enjoy the cap's protection.  Thus, neither does the United States when it is sued in place of a medical services specialist.

The Seventh Circuit case, Ezekial v. Michel, 66 F.3d 894 (7th Cir. 1995), cited by the dissent does not support its position.  There, the plaintiff, a government employee, was injured by another government employee, a doctor.  The plaintiff attempted to sue the doctor, but could not because the Federal Employees' Compensation Act (FECA), 5 U.S.C. §§ 8101, et seq., provided the plaintiff's exclusive remedy.  FECA supplants liability that would otherwise exist under the FTCA for on-the-job injuries suffered by government employees.  Lockheed Aircraft Corp. v. United States, 460 U.S. 190, 193-94 (1983).

Here, on the other hand, nothing supplants the liability imposed by state law and the FTCA.  To the contrary, both the Westfall and the Gonzalez Acts reinforce the fact that the FTCA's provisions placing liability on the United States are exclusive.  That liability is the same liability that the employees, medical services specialists, would have borne absent immunity from suit.

There has, however, been no finding of negligence on the part of the medical services specialists.  The United States merely admitted liability generally and then moved for damages to be limited to $1 million under the statute that has now been held invalid.  We must, as a result, remand this case to the District Court for a trial on the issue of whether any medical services specialist was negligent.  If so, there will be no limit on damages recoverable against the United States.  On the other hand, if no medical services specialists were negligent, damages will be limited in accordance with the revived statute:  a $500,000 limit on general or non-economic damages, no limit on special or economic damages.

Our third certified question was whether South Dakota law recognized a separate cause of action for loss of consortium and emotional distress for injuries to a minor child. That State's Supreme Court held that no such cause of action exists. Knowles II, 544 N.W.2d at 193. We affirm the portion of the District Court's order that dismissed this claim.

The South Dakota Supreme Court did hold, however, that the Knowleses could assert a cause of action for loss of services and for recovery of medical expenses in their own right. Ibid. Any damages awarded under this cause of action will be special damages subject to no cap. The Knowleses have not pleaded such a cause of action, but may move for leave to amend their complaint and assert this claim on remand.

Our last certified question, whether the damages cap applies separately to each plaintiff, Knowles I, 29 F.3d at 1266, is now irrelevant. While Kris's cause of action may be subject to a cap depending on whether any medical services specialists were negligent, his parents' cause of action is not. Only special damages may be awarded under their theory of recovery, and special damages are not limited under the revived statute. The two causes of action are, however, "linked in regard to liability," so that the parents may not recover unless the child recovers. Knowles II, 544 N.W.2d at 195.

III.

This case is remanded to the District Court for proceedings consistent with this opinion. That Court should make a finding regarding whether negligence on the part of any medical services specialist caused Kris's injuries. If this finding is in the affirmative, no cap will apply. If it is in the negative, the District Court should separately find the amounts of general and special damages. If a motion to amend their complaint is made by

Mr. and Mrs. Knowles to assert a claim for loss of services and for medical expenses for which they are liable under state law, the District Court will exercise its discretion to grant or deny the motion. There can be, in any event, no duplicate recovery for medical expenses.

It is so ordered.

BEAM, Circuit Judge, dissenting.

The court's opinion repeals, insofar as the United States is concerned, the $500,000 malpractice general damages cap that the South Dakota Supreme Court has just told us "remains in full force and effect." Knowles v. United States, 544 N.W.2d 183, 204 (S.D. 1996) (Gilbertson, J., writing for the majority on revival of the earlier statute). From this result, I dissent.

The issue in this appeal is whether the liability for any alleged negligence of an Air Force medical services specialist (under civilian parlance, a "nurse's aide") is capped under that revived statute. The South Dakota statute mentions neither the position of medical services specialist nor nurse's aide. A hospital, as noted by the court, is, however, a beneficiary of the limits established by the South Dakota Act. This includes a military hospital. See Lozada v. United States, 974 F.2d 986, 987 (8th Cir. 1992) (applying Nebraska damages cap statute to a military hospital).

The court, quoting our earlier opinion in this same case, Knowles v. United States, 29 F.3d 1261, 1265 (8th Cir. 1994), states that the United States "is `standing in the shoes'" of the medical services specialists, the government employees purportedly guilty of culpable conduct in the treatment of Kris Knowles. Supra at 4. While the "standing in the shoes" metaphor may be a handy illustration for some purposes, it is only an illustration and is

not an accurate statement of the law under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671-2680. The FTCA allows the United States to assume liability for the negligence of its employees under a theory of respondeat superior, much as a private employer would under ordinary tort law. Accordingly, it may only "step into the shoes" of the hospital as the employer of allegedly negligent staff.[1] It may not step into the shoes of the negligent employee.

Analysis of this case must begin with a rudimentary examination of the Federal Tort Claims Act, under which this suit is brought. The FTCA provides for a limited waiver of the United States' absolute immunity from suit. Under the FTCA, the United States, subject to specific exceptions not applicable here, has statutorily waived its sovereign immunity and voluntarily assumed liability for the wrongful act of an "employee" while "within the scope of his office or employment." 28 U.S.C. § 2672. Similarly, the jurisdictional counterpart to the FTCA limits liability to "claims . . . for money damages . . . for injury . . . caused by the negligent or wrongful act or omission of any <u>employee</u> of the Government <u>while acting within the scope of his office or employment</u>." 28 U.S.C. § 1346(b) (emphasis added). The FTCA explicitly excludes liability of the government for the negligent actions of independent contractors. 28 U.S.C. § 2671. It also excludes liability of the government under any theory involving managerial agents or officers empowered to act on behalf of the

---

[1]Concededly, if a private employer were involved, the liability of the employee, here the medical services specialist, would not be extinguished just because the employer is also liable. <u>See generally</u> W. Page Keeton, et al., <u>Prosser and Keeton on the Law of Torts</u> § 69, at 499 (5th ed. 1984) ("all that the law [of respondeat superior] has done is to broaden the liability for that [employee's] fault by imposing it upon an additional, albeit innocent, defendant.").

United States in a policy-making capacity. 28 U.S.C. § 2680(a).[2] Thus, by its very terms, FTCA liability is limited to responsibility under the theory of respondeat superior.

Phrases such as "scope of employment" and "employees acting within the scope of their employment" are conspicuous in the statute. This is the language of respondeat superior. Indeed, the Knowles's complaint is replete with this terminology.[3] These terms

---

[2]An employer's liability for the acts of an employee can come in two distinct forms that are sometimes confused: master/servant (employer) liability and principal/agent (principal) liability. When an employee negligently drives a vehicle on company business and injures another, the doctrine of respondeat superior is applicable even though negligent driving is not company policy. The employee negligence is imputed to the employer. On the other hand, principal/agent liability involves managerial acts by an individual (such as a corporate president) empowered by the employer (such as through a corporate board of directors) to create and implement the employer's policy decisions. These are considered direct acts of the employer. See generally Restatement (Second) of Agency § 217 C (1958) and Restatement (Second) of Torts § 909 (1979) (regarding imposition of punitive damages for managerial acts). The discretionary act exemption of the FTCA, 28 U.S.C. § 2680(a), shields the United States from liability in these situations. See Dalehite v. United States, 346 U.S. 15, 36 (1953) (discussing discretionary function exemption: "where there is room for policy judgment and decision there is discretion"). In any event, medical service specialists, are not, under any stretch of the imagination, policy-making officers or employees with discretionary authority, whatever theory of employer/employee liability you may wish to apply.

[3]In the complaint, the Knowleses allege that the United States is liable for the wrongful acts of its employees, i.e., hospital personnel. Specifically, they allege that the United States, "through its agents and employees, all acting within the scope of their agency and employment," allowed the temperature of Kris Knowles room to fall to such a level as to cause hypothermia; that its "agents and employees . . . should have known that the temperature posed a hazard to newborn infants;" that the United States, "through its hospital staff," was told of the intolerable cold temperatures. Plaintiffs further allege that the United States, "by and through its hospital staff and

-10-

of art are borrowed from the common law of torts and agency. To that effect, for purposes of the FTCA, the common law of torts and agency defines the distinction between an independent contractor (for whose torts the government is not responsible), a policy-making agent (for whose torts the government is not responsible) and a servant (for whose torts the government is responsible). B & A Marine Co. v. American Foreign Shipping Co., 23 F.3d 709, 713 (2d Cir.), cert. denied, 115 S. Ct. 421 (1994); see also Toole v. United States, 588 F.2d 403, 407 n.4 (3d Cir. 1978). "Employee" in the statute is to be read as having the same general meaning as "servant" in the body of law relating to respondeat superior. United States v. Becker, 378 F.2d 319, 321 (9th Cir. 1967). Thus, courts consult a state's applicable law of respondeat superior to determine "scope of employment" under the FTCA. See, e.g., Heuton v. Anderson, 75 F.3d 357, 360 (8th Cir. 1996); Walsh v. United States, 31 F.2d 696, 699 (8th Cir. 1994) (both applying Iowa respondeat superior law). And, it is hornbook law that liability under respondeat superior theory is vicarious, and not direct, liability. W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 69, at 499 (5th ed. 1984). See also Sterling v. United States, 85 F.3d 1225, 1229 (7th Cir. 1996) (the FTCA creates vicarious liability).

The FTCA also provides that the United States is liable "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, or "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). "Private person or individual" includes such entities as corporations, municipal corporations, and hospitals. See, e.g., Lozada, 974 F.2d at 989 (military hospital). Moreover, there need

---

employees," failed to monitor or to report the newborn's low body temperature and that the "hospital staff and employees, including its physicians, nurses and other attendants," knew or should have known the infant was becoming hypothermic.

not be an actual "private party" under like circumstances as the United States; the statute merely requires us to analogize to a hypothetical private party under "like circumstances." Bush v. Eagle-Picher Indus., Inc., 927 F.2d 445, 452 (9th Cir. 1991). In this context, the "hypothetical private party" is analogous to a private employer. See, e.g., Gutierrez de Martinez v. Lamagno, 115 S. Ct. 2227, 2229 (1995) (people injured in automobile accident suing driver and driver's employer/government agency); United States v. Smith, 499 U.S. 160, 162 (1991) (injured patient suing doctor and doctor's employer/Army hospital).

Although the waiver of sovereign immunity extends to torts committed by government employees, the FTCA grants total immunity to employees for torts committed in the course of their employment. 28 U.S.C. § 2679(b)(1), (d)(2) (also called the Federal Employees Liability Reform and Tort Compensation Act of 1988 or the Westfall Act).[4] The FTCA further provides that the United States "shall be entitled to assert any defense based upon judicial or legislative immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim." 28 U.S.C. § 2674. One of these sources of legislative immunity is

---

[4]The Westfall Act was enacted in response to the holding in Westfall v. Erwin, 484 U.S. 292, 297 (1988), that government employees were absolutely immune only from state-law tort liability for acts that were both within the scope of their employment and discretionary in nature. The Westfall decision effectively denied most federal employees immunity from lawsuits against them personally for torts committed in the scope of employment. It narrowed the respondeat superior liability of the United States while shifting the liability to the employees individually.

Through the Westfall Act, Congress legislatively overruled the Westfall decision. Nasuti v. Scannell, 906 F.2d 802, 804 (1st Cir. 1990). The Act provides a federal employee with absolute immunity from an ordinary tort suit if the suit arises out of acts performed within the scope of employment. 28 U.S.C. § 2679(b)(1). Thus, an action against the United States is the only remedy for injuries caused by federal employees acting within the scope of their employment. Anthony v. Runyon, 76 F.3d 210, 212-13 (8th Cir. 1996).

the Westfall Act. Another is the Gonzalez Act, 10 U.S.C. § 1089 (also called the Medical Malpractice Immunity Act).[5] These statutes confer absolute immunity on Government employees for liability for acts committed in the course of employment. Both grants of immunity are available to the medical services specialist in this case.[6]

Discussing the Westfall Act, the court asserts that the United States has "removed liability from its employees and placed it on itself" and thus is "liable to the same extent the employee would have been absent immunity from suit." Supra at 5. This is not a correct statement of the law. The government has waived its immunity with respect to acts of its employees acting within the "scope of [their] office or employment," 28 U.S.C. § 1346(b), so as to be liable to the same extent that private employers are held liable under state law for the acts and omissions of their employees. Fair v. United States, 234 F.2d 288, 294 (5th Cir. 1956) (emphasis added). Thus, as defendant, the United States is liable only under a statutorily-imposed respondeat superior theory. See Gutierrez de Martinez, 115 S. Ct. at 2229 ("[g]enerally, such cases unfold much as cases do against other employers who concede respondeat superior liability"). Congress intended this statutory

---

[5]Like the Westfall Act, the Gonzalez Act was passed in response to a decision, Henderson v. Bluemink, 511 F.2d 399 (D.C. Cir. 1974), that expanded the tort liability of military physicians. Smith, 499 U.S. at 170 n.11. The Gonzalez Act provides protection against malpractice liability to any military "physician, dentist, nurse, pharmacist, or paramedical or other supporting personnel" for any negligent or wrongful acts committed while acting within the scope of duties or employment. 10 U.S.C. § 1089(a). The meaning of the act is clear: a suit against the United States is the only remedy for malpractice of military medical personnel. Jones v. Newton, 775 F.2d 1316, 1318 & n.1 (5th Cir. 1985) (per curiam).

[6]The more generous immunity available under the Westfall Act is available to those federal employees previously covered by other immunity statutes such as the Gonzalez Act. See United States v. Smith, 499 U.S. 160, 173 (1991).

scheme to immunize employees from a particular type of claim--the sort of wrongdoing for which employers, typically, are vicariously liable under principles of respondeat superior.  Wood v. United States, 995 F.2d 1122, 1125 (1st Cir. 1993) (en banc).[7]

Thus, the crucial question in most Federal Tort Claims Act cases becomes whether an individual is acting within the scope of his or her employment.[8]  Scope of employment sets the line:  if an employee is inside the line, he is not subject to suit; if he is outside the line, he may be personally liable.  Gutierrez de Martinez, 115 S. Ct. at 2231.  For negligence committed by those inside the line, the United States is the only available defendant, and then only to the extent permitted by the FTCA.  Id.  The Supreme Court has made it clear under these statutes that federal employees are immune from liability even if substitution of the United States as defendant leaves the plaintiff without a remedy.  Smith, 499 U.S. at 166 ("Congress recognized that the required substitution of the United States as defendant in tort suits filed against Government employees would sometimes foreclose a tort plaintiff's recovery altogether.").[9]

---

[7]The Wood case has been criticized on grounds not relevant to this discussion.  Heuton v. Anderson, 75 F.3d 357, 360 (8th Cir. 1996).

[8]The FTCA includes a certification procedure to determine whether the employee is in the scope of employment.  28 U.S.C. § 2679(d).  Under this procedure, the Attorney General certifies that a government employee was in the scope of employment at the time of the actionable act or omission.  Id.  Once certified, the employee is absolutely immune from suit for actions in the course and scope of employment.  As far as the record shows, such certification in this case apparently took place at the administrative claim level.

[9]The court argues that the availability of supplanted liability is a crucial factor in conferring Westfall Act immunity.  Supra at 6.  As the Smith case makes clear, the availability of another remedy is of no concern.  Smith, 499 U.S. at 166.  The plaintiffs in Smith were left completely without a remedy because the United States had not waived its immunity for the negligence of military
doctors on foreign soil and the doctors themselves were immune from suit under the Westfall Act.  Id.

The effect of the statutory scheme in the present case is that the United States steps into the shoes of the hospital, as employer, under respondeat superior theory. The government cannot stand in the shoes of a negligent federal employee, individually, because the employee is immune from suit.[10] Here, because of the malpractice damages cap, the amount that Kris Knowles can recover under imputed liability may be less than he might have been able to recover under the medical services specialist's direct liability, if any. The trade-off for that, however, is his ability to sue the United States which is ordinarily immune from suit.

The court's approach ignores "course of employment" language in the FTCA and Westfall and Gonzalez Acts. The court effectively writes the "course of employment" language right out of these statutes. This language can mean nothing else but that the United States is vicariously liable.

In conclusion, contrary to the court's holding, the United

_____

[10]A case that illustrates the exclusivity of this statutorily-imposed respondeat superior action is Ezekiel v. Michel, 66 F.3d 894 (7th Cir. 1995). In that case, a Veterans Administration (VA) nurse sued a VA resident physician for a needle prick that resulted in hepatitis. Because the doctor was found to be a federal employee under the FTCA, substitution of the United States as defendant was required. Id. at 901, 904. The case was subject to dismissal after substitution. Id. at 901. Contrary to the court's assertion, supra at 6, the case against the doctor, individually, was not dismissed because FECA provided the exclusive remedy, but because he was immune from suit under the Westfall Act, leaving the United States (the nurse's employer) as the only defendant. Ezekiel, 66 F.3d at 897 (if Dr. Michel was a federal employee, then the Westfall Act would nullify Ezekiel's claim against Dr. Michel). The fact that federal worker's compensation (FECA--the Federal Employees' Compensation Act, 5 U.S.C. §§ 8101 et seq.) provided a remedy was not dispositive. Indeed, absence of another means of recovery does not affect Westfall Act immunity. Supra at 14-15 n.9. Just as direct recovery against Dr. Michel was barred in Ezekiel, Kris Knowles's recovery is limited in this case.

States cannot step into the shoes of the medical services specialist individually--he or she is immune from suit.  Instead, the plaintiff has an action, under a federal statutory grant of authority, against the medical services specialist's employer, the United States.  Because that employer, the sole source of liability, is a hospital, the damages cap applies.  I would remand this case for entry of judgment against the United States in the amount of $500,000 in general damages and for a determination of other damages not subject to the statutory limitation.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.